Wachtler, J.
While confined in a county jail,[1] appellant was placed in punitive segregation for a period of approximately five days. He brought this action, seeking monetary damages and injunctive and declaratory relief, alleging, inter alia, that *56 this' segregated confinement, without a hearing, was violative of his constitutional rights.
A close reading of appellant’s papers discloses that the gravamen of his complaint is that he had the right to a full hearing, with all of the traditional trial safeguards, that he was denied such a hearing, and that his confinement amounted to cruel and unusual punishment.
The legal weakness and sparsity of facts presented to the court in the pleadings and affidavits of both parties were so infirm as to virtually invite summary judgment. However, before granting this relief, a court must search the record to determine if any facts are alleged which do state a cause of action. In so doing ‘ ‘ any other form of evidence, documentary or otherwise, may also be used ” (Siegel, Practice Commentaries, McKinney’s Cons. Laws of N. Y., Book 7B, CPLR 3212.15, p. 436).
In his complaint, appellant asserts that ‘[1] The placing of plaintiff in a solitary confinement cell was done intentionally, and maliciously * * * thus entitling Plaintiff to compensatory and punitive damages ”. This allegation does not state a cause of action for intentionally and maliciously punishing appellant without legitimate reason. However, in a supporting affidavit executed in connection with a motion for a preliminary injunction appellant stated: “ I believe that I did not violate any rule or regulation of the Monroe County Jail or commit any violation of the law prior to being placed in the solitary confinement cell ”,
In his affidavit, the respondent Sheriff implicitly asserts that appellant somehow violated the discipline of the jail, but he fails to state in what manner this was done.[2] The Sheriff contends that: “ Your deponent has a constitutional right to place *57 prisoners in solitary confinement if a prisoner violates the good discipline and order of the jail.” To the extent that the foregoing statement can be interpreted as asserting a right of detention officials to mete out discipline or withhold privileges without having to give a reason therefore, it is as overblown and untenable as the assertion by appellant of his rights.
In the Second Circuit case dealing with the right of prisoners to bring civil suits (Sostre v. McGinnis, 442 F. 2d 178, cert. den. 404 U. S. 1049), the defendants (i.e., prison officials) were careful to spell out the offenses allegedly committed by the inmate which underlay the discipline, including specific breaches of the rules spelled out in the Prisoner’s Handbook (pp. 183-184). The inmate appellant prevailed on that issue because the fact finder concluded that the discipline was meted out for illegitimate reasons rather than for the reasons alleged by the prison officials (p. 184).
If detention officials did not have to give reasons for their actions in punishing or withholding privileges from an inmate, they could in effect, act in an unconstitutional manner safely screened from court or administrative review. (See, e.g., Cooper v. Pate, 378 U. S. 546; Lee v. Washington, 390 U. S. 333.)
Since we can construe the Sheriff’s affidavit to aver that he acted in a legitimate manner, “ to maintain the discipline and order of the jail ”, that question of fact will have to be resolved at trial by the fact finder.
Appellant’s main complaint appears to be that he was denied a hearing before being sent to the isolation cell. He asserts he had a constitutional right: to notice; to present witnesses; to testify on his own behalf; to cross-examine witnesses; to be represented by counsel, or counsel substitute; to an impartial hearing examiner; and to a decision based on the evidence. Both parties concede that appellant had been afforded none of these alleged rights.
Appellant’s asserted constitutional right to the panoply of protections cannot be sustained by current case law on the facts of this case. However, respondents’ apparent assertion that appellant is not entitled to any due process safeguards is equally without merit.
The trial court recognized the minimal due process requirements spelled out in the Sostre case {supra) but felt the case *58 at bar was distinguishable in that here there was no ‘ ‘ substantial ” (Sostre, p. 202) discipline involved. The punitive segregation imposed in this case lasted for only five days as opposed to the punishment in Sostre which lasted for over one year. However, the punishment here is nevertheless substantial in juxtaposition to the broad range of minor punishments that could be and are meted out short of punitive segregation.
We do not wish nor intend to make due process safeguards turn on whether a court chooses to define a particular punishment as “ substantial ” or not. Suffice it to say, that the punishment meted out in this case must carry with it at least the minimal safeguards afforded by the due process of law. Confining someone in a segregation cell is not a minor punishment. Equally important, an inmate’s prison record may have a great effect on the future punishment he will receive and may even affect his chances for parole. (See Hudson v. Hardy, 424 F. 2d 854, 856.)
The requirements of due process are not static; they vary with the elements of the ambience in which they arise. (See, e.g., Mullane v. Central Hanover Trust Co., 339 U. S. 306, 313; Goldberg v. Kelly, 397 U. S. 254, 263.) In Sostre the court held that there the plaintiff had the right to know the charges and evidence against him and to explain his action (442 F. 2d, at p. 198). Whatever the intended scope of Sostre, the minimum (id.) due process requirements spelled out are sound. They help guard against the possibility of an inmate being sent to punitive segregation for illegitimate reasons. They also provide a record of at least the substance of the charges and denials for reviewing bodies to study should the detention official’s actions be questioned or the inmate’s past record become pertinent. To require detention officials to write out the charges against a prisoner does not seem to impose too heavy a burden; nor is it an undue burden to allow the prisoner to" defend himself against those charges. The fact finder need not be from outside the detention facility however he should be someone who is not likely to prefer charges against prisoners as part of the normal course of his duties[3] (accord In re Murchison, *59 349 U. S. 133, 136). The hearing should be simple, quick, and should take place as soon as practicable.
In any event, on the fact pattern alleged in this case, appellant was entitled to a rudimentary administrative hearing at least. Although the rights he claimed may have been greatly over-exaggerated, a cause of action does lie for the denial of the rudimentary rights spelled out in this decision.
Appellant asserts correctly in his complaint, that he has the right to be free from cruel and unusual punishment. That such cruel and unusual punishment can occur within the four walls of a prison cannot be gainsaid. (See, e.g., Church v. Hegstrom, 416 F. 2d 449,451.) It is also now evident that the Eighth Amendment of the United States Constitution is binding on the States. (See Robinson v. California, 370 U. S. 660.) Nevertheless, even taking appellant’s assertions as true, we hold that he did not state a cause of action for the abridgement of his right to be free from cruel and unusual punishment.
Punitive segregation is utilized in every State in the Nation. (See President’s Commission on Law Enforcement and the Administration of Justice: Task Force Report: Corrections [1967], pp. 50-51.) Merely confining an inmate in a segregated cell does not constitute cruel and unusual punishment. There are, of course, some cells that are so subhuman as to constitute such punishment even for a very brief confinement. (See, e.g., Wright v. McMann, 387 F. 2d 519; Hancock v. Avery, 301 F. Supp. 786; Holt v. Sarver, 310 F. Supp. 825; Jordan v. Fitzharris, 257 F. Supp. 674.) One day in some cells might be constitutionally intolerable (see Sostre, 442 F. 2d, at p. 193, n. 2). Short of a situation such as existed in Wright {supra) the determination of when a punishment becomes cruel and unusual involves a balancing process.
In Sostre, the inmate was kept in punitive segregation for over one year but the confinement conditions, although “ severe ” (Sostre, 442 F. 2d, at p. 192) were not so intolerable as to shock the conscience (see Rochin v. California, 342 U. S. 165,172). In the case at bar, the time spent in confinement was considerably shorter than in Sostre, but the conditions of confinement were worse. In Sostre, the inmate was not kept from contacting fellow inmates; he had a normal sized cell, all legal materials were available; and he could exercise (Sostre, p. 186). *60 Appellant in this case allegedly was not allowed to converse with other inmates and the cell appeared to be more uncomfortable than in Sostre: “ The ventilation is very poor and the only good source of air is through a feeding slot located in the door. The trap door remained closed during the time that the Plaintiff was in solitary confinement. Lighting in the cell is provided by two (2) high intensity lamps which generate a great deal of heat making it extremely hot in the cell. There is cold water only in the cell making personal hygiene almost impossible.”
As unappealing as the cell appears, it hardly compares to the condition of the strip cell in La Reau v. MacDougall (473 F. 2d 974) the salient features of which included a “ Chinese toilet ” (i.e., hole in the ground flushed out with water from an outside control) and no sink (p. 977).
The time spent in the punitive segregation, the underlying offense, the conditions of the cell, and the physical and mental health of the inmate all are factors to be weighed in determining whether punitive segregation in the questioned instance is cruel and unusual. However, it should be kept in mind that conditions must be “ barbarous ” or “ shocking to the conscience ” (La Reau, supra, at p. 978) before they can be termed cruel and unusual punishment. The criteria are the standards of society. Merely confining a man to imprisonment of any type may seem barbarous to some Judges, but it clearly not so to society at large.
Even assuming the facts to be as appellant has alleged, he has fallen far short of stating such facts as would give rise to a cause of action for cruel and unusual punishment in a constitutional sense. The cell conditions, though spartan, were far from subhuman; the term of confinement was brief; and there is no allegation that prison officials knew or should have known that appellant was suffering from some substantial mental or physical affliction. Even though we still do not know what appellant was being punished for, we hold that five days confinement under the conditions spelled out would not rise to the level of cruel and unusual punishment and it is evident, that the trial court was correct in dismissing this cause of action. The conditions of confinement will be a factor in determining damages, *61 if any, should it be found that appellant was intentionally and maliciously put in punitive segregation for illegitimate reasons.
The lower courts also dismissed appellant’s cause of action bottomed on respondents’ alleged interference with attorney-client mailings. In his affidavit, the Sheriff points out that appellant does not allege that any detention official ordered the permanent seizure of any mail going between appellant and his attorney. However, appellant does allege that several letters sent to several different people failed to reach their destination. It may be that at trial appellant can build a strong enough case on circumstantial evidence to prevail on this cause of action (see Matter of Brabson v. Wilkins, 19 N Y 2d 433). Equally important is the Sheriff’s admission to censoring the letters that were written by appellant to his attorney .(see Ex Parte Hull, 312 U. S. 546). The Second Circuit appears to have severely circumscribed the right of prison officials to edit letters flowing from an inmate to his lawyer or the court. (See Sostre, p. 200; Wright v. McMann, 460 F. 2d 126,131, cert. den. 409 U. S. 885.) Although detention officials have the right to censor letters to attorneys[4] (see Matter of Brabson, supra, p. 437) this cannot be done in an arbitrary and capricious manner. Detention officials must have good cause[5] before censoring an inmate’s letter to an attorney. From the papers before us, we cannot determine what the Sheriff had his men delete and why. Those facts will have to be developed at trial.
In sum, appellant has stated a cause of action for intentional and malicious action on the part of respondents in (1) subjecting appellant to punitive segregation for no legitimate reason (2) failing to give appellant the rudimentary protections of due process and (3) capriciously censoring and perhaps destroying letters sent by appellant to his attorney.
*62 If it becomes appropriate to award damages in this case, the court should keep in mind that the wrongs if atiy, were committed by officials performing the most dangerous of jobs where occasional lapses of judgment are understandable if not excusable. In a case such as this, courts should be careful to limit monetary damages to those that are closely and directly related to the wrong perpetrated — speculative damages should not be allowed. Punitive damages should be awarded only where the action of the respondent is particularly egregious or where there has been a pattern of wrongdoing (cf. Sostre, p. 205; see Wright v. McMann, 460 F. 2d 126, 129-130, supra). Injunctive relief should be granted more readily, and, in many cases will be the only appropriate remedy.
It is apparent that appellant seeks to have this court lay down some generic and far-reaching guidelines for conduct of detention officials and the conditions of prisons. We do not believe this to be our role. (Accord Knight v. Ragen, 337 F. 2d 425, cert. den. 380 U. S. 985.) We would but observe that a prison cannot be run by unbridled ukase; by the same token we recognize that it can not be run as a fledgling democracy. We may disagree with many of the actions taken by detention officials. But it is not up to this court to choose from conflicting penal sociological theories. Even detention officials’ activities which are universally condemned will not be terminated by this court if they do not transgress some law or pertinent rule or regulation. The role of the courts is not to put a stop to practices that are unwise, only to practices that are unconstitutional or illegal.
In this, respect, we should point out that it would be of great benefit to both the courts and the detention centers themselves if the officials within were guided by a comprehensive set of carefully drafted and closely adhered to rules and regulations relating to prisoners’ rights,[6] conditions of detention centers, *63 and activities of prison officials.[7] Closely adhered to comprehensive rules and regulations drafted by a competent body will not insulate the detention officials from court review (see Nieves v. Oswald, 477 F. 2d 1109, 1113, 1114), but they will have the effect of limiting the intensity and scope of that review.

. We use the term “ detention officer ” and “ detention facility ” in this decision to refer to both State and local detention facilities and their employees.

. Even if the Sheriff had spelled out the facts supporting his reason for administering the discipline, there would have been a question for the fact finder to determine. The mere allegation by a prisoner that he did not violate any jail regulations or do anything else to warrant punishment is enough to make out a cause of action since it would be virtually impossible to allege all of the possibly punishable acts he did not commit. It would have been more prudent of respondents to allege the specific acts underlying the punishment; however, the Sheriff’s allegation that appellant did commit a breach of prison discipline is harely enough to pose a triable issue of fact and avoid summary judgment for the appellant on this issue.

. The Sostre court did not reach the issue of whether or not there had to be an impartial trier of fact. (See Nieves v. Oswald, 477 F. 2d 1109, 1113.)

. It has been persuasively argued that detention officials should not be able to open letters flowing from an inmate to his attorney at all (23 Stan. L. Rev. 473, 479, 480).

. The fact that the letter may contain false information or allegations attacking detention officials would not constitute good cause. (See Wright v. McMann, 460 F. 2d 126, 132.) There must be somé threat to the security of the prison or some illegal scheme before letters sent from an inmate to his attorney, the court, or a public official may be censored.

. We are aware and wish to emphasize that the courts are often a poor vehicle to use to air and resolve prisoner complaints. An effective internal grievance procedure, such as the one now being utilized by the Bureau of Prisons for Federal institutions, has the salutory effect in many instances of both providing a satisfactory grievance-solving mechanism short of inflammatory litigation and keeping down the significant flow of prisoner complaints into an already overburdened court system.

. Our decision spells out only the minimal legal requirements that detention officials must follow. Of course, rules and regulations may be promulgated which go heyond these minimal requirements. (See, e.g., Minimum Standards and Regulations for Management of County Jails and Penitentiaries of the State Commission of Correction, § 5100.5, subd. [a], par. [6] [7 NYCRR 5100.5 (a) (6)] [outgoing special correspondence cannot be read or censored by detention officials].)