■ In the Matter of NORA ARNER, Appellant-Respondent, v JANICE P. WARNE, as Superintendent, Bedford Hills Correctional Facility, et al., Respondents-Appellants.—In a proceeding pursuant to CPLR article 78 *inter alia* to review three determinations, made after separate superintendent's proceedings, that petitioner be confined to "Special Housing" for certain periods, the parties cross-appeal from a judgment of the Supreme Court, Westchester County, dated December 19, 1975, which (1) denied the branch of the petition which sought to (a) annul the aforesaid determinations and (b) expunge from all records any reference thereto and (2) directed the respondent New York State Board of Parole "to provide petitioner with a written statement of the reasons her parole was denied". Judgment affirmed, without costs or disbursements. Petitioner is a prisoner in the Bedford Hills Correctional Facility, serving an indeterminate 10-year sentence imposed on her in July, 1974 on a conviction of manslaughter. On January 19, 1975 she was confined to "Special Housing" (segregation) after a fight in which another inmate was cut with a broken glass jar. Thereafter, in three "Formal Charges", she was charged with committing that and other infractions of the disciplinary rules, of which the most serious was setting fire to her bed. The violations were sustained, substantially on petitioner's admissions in three disciplinary hearings held on February 14 and 26, and on March 3, 1975. She was placed in punitive segregation for 60 days, beginning January 19, 1975. On April 30, 1975 petitioner appeared before the Board of Parole; she was denied parole and the next date for review was set for June, 1977. Petitioner pleaded guilty to assault in the second degree on charges stemming from her fight with the other inmate and, on May 7, 1975, she received a sentence of three to six years, to run concurrently with the sentence she was then serving. In this CPLR article 78 proceeding, petitioner seeks to have the three disciplinary proceedings declared null and void on the ground that her constitutional rights were violated, to expunge all references to them from her record and to be furnished with a statement of the reasons for the denial of parole. Special Term held, without a hearing, that there had been no constitutional impairment of petitioner's due process rights and directed the parole board to give petitioner a written statement of its reasons for denying her parole. On this record, no hearing was required at Special Term. In view of the facts that petitioner was segregated on January 20, 1975, following a violent attack upon another inmate, and that she thereafter committed other violent infractions of the rules, almost all of which she has admitted, the disciplinary hearing on February 14, 1975 took place "as soon as practicable" (see *Wilkinson v Skinner,* 34 NY2d 53, 59). In a criminal proceeding after a guilty plea, constitutional violations which are not logically inconsistent with factual guilt are irrelevant *(Menna v New York,* 423 US 61, 62, n 2). A fortiori, after petitioner's voluntary admission of the charges, a claim that she did not receive timely formal notice of the first disciplinary hearing, as required by *Wolff v McDonnell* (418 US 539, 564), even if true, is irrelevant. Petitioner does not claim that her admissions were involuntary or that she did not in fact commit the infractions charged. We note that her attorney claimed only that she received notice of the first hearing at 2:00 P.M. and that the hearing began in the early afternoon of the following day. The record shows that petitioner prepared a response and explanation, apparently with the assistance of the parole officer of her choice. By the same reasoning, petitioner's claims with respect to her rights to call, confront and cross-examine witnesses are also irrelevant (cf. *Menna v New York, supra; Matter of McQueen v Vincent,* 53 AD2d 630). An inmate's right to call

witnesses is limited and may be abridged where it would be unduly hazardous to institutional safety or to correctional goals; a written statement of the reasons for denial of such right, while "useful", is not necessary (see *Baxter v Palmigiano,* 425 US 308, 320–323; *Wolff v McDonnell, supra,* p 566). Because of the increased hazard, there is no right to confront and cross-examine witnesses; it is a matter which must be left to the sound discretion of the prison authorities *(Baxter v Palmigiano, supra,* pp 322–323; *Wolff v McDonnell, supra,* pp 567–569). As noted by Special Term, there is no allegation that petitioner made a request to call witnesses or to inspect evidence, and substantially all of the findings were based upon her admissions. Further, it appears from the record that, at her request, a certain parole officer was appointed by the prison authorities to assist her and that, again at her request, he took a statement from a witness. Petitioner had no right to counsel although the charge concerning the attack on the other inmate involved conduct punishable as a crime and criminal proceedings were apparently pending (cf. *Baxter v Palmigiano, supra,* pp 320–322). The *Miranda* requirements are not applicable to a disciplinary hearing and an adverse inference may be drawn from an inmate's silence at such a hearing *(Baxter v Palmigiano, supra,* pp 319–320). Petitioner's statements could not be used against her in a criminal proceeding (see 7 NYCRR 253.4 [a]), and she was so advised. Special Term properly directed the Parole Board to furnish petitioner with a written statement of the reasons for its denial of parole (see *Solari v Vincent,* 46 AD2d 453, revd on ground of mootness 38 NY2d 835). Martuscello, Acting P. J., Latham, Cohalan, Margett and Shapiro, JJ., concur.