Chief Judge Breitel.
In this proceeding under CPLR article 78, petitioner Amato, a State prisoner, seeks an order directing respondent correctional authorities to restore six months "good time”, that is, time allowed for good behavior in determining eligibility for conditional release (Correction Law, § 803, esp subds 1, 5; Penal Law, § 70.40, subds 1, 3). Supreme *470 Court dismissed the petition, a divided Appellate Division affirmed, and petitioner appeals.
The issue is whether constitutional mandates of due process of law require that a prisoner be given a hearing, with written advance notice of "charges” or bases for denying him a full time allowance, before the authorities may, in the exercise of their statutory discretion, deny him good behavior time based on his whole institutional record. Not involved, although confused by petitioner, is the institutional resolution of particular charges of misconduct against a prisoner. Resolution of such charges may require a hearing on notice with the now usual and accepted procedural rights in New York to confront and to call witnesses, and, in appropriate cases, the right to representation.
The order of the Appellate Division should be affirmed. Due process of law does not mandate a rigid procedure for making good time determinations. Instead, the Constitution requires only that prisoners be not penalized for prison misconduct without notice and hearing on charges of misconduct. Petitioner, indeed, received hearings, more protective than those required by due process of law, on all discrete charges of misconduct in prison. Once those proceedings were concluded prison authorities were entitled to rely upon them as well as everything else in his prison record, good or bad, in granting petitioner less than the maximum allowable good time.
On February 16, 1973, petitioner Amato, having been convicted of manslaughter, second degree, was sentenced to an indeterminate prison term with a maximum of 10 years. Amato was credited, as of the time of sentence, with almost four years of jail time (1,419 days).
Amato’s prison record was marked by altercations with the prison authorities, often resulting in disciplinary action. The unfavorable record started shortly after he was received in the State prison and continued even after his appearance before the time allowance committee. Petitioner was brought before an adjustment committee more than a half dozen times, and, on two occasions, charges were filed against him in a superintendent’s proceeding. In each case, disciplinary sanctions were imposed. In the first superintendent’s proceeding, one of the sanctions imposed was the loss of 60 days good time. That sanction is not an issue in this appeal.
On or about October 1, 1975, as Amato’s conditional release date drew near, he appeared before the prison time allowance *471 committee, in compliance with the applicable regulations (7 NYCRR 261.3 [b], [d]). The committee, after reviewing petitioner’s "extremely poor institutional record”, recommended that he be allowed two years and eight months good time rather than the then allowable maximum of three years and two months. When Amato appeared before the committee again in December, no change in the recommendation was made.
After the committee’s October determination, this proceeding was brought in Supreme Court, Dutchess County, seeking restoration of six months good behavior time. On November 20, 1975, the petition was dismissed, and on May 24, 1976, the Appellate Division affirmed, with two Justices dissenting. Although Amato has since been released on parole, the case presents recurring issues of public interest, and should not be dismissed for mootness (see, e.g., Matter of Beattie v New York State Bd. of Parole, 39 NY2d 445, 446-447).
Petitioner relies on Wolff v McDonnell (418 US 539). In the Wolff case, a Nebraska prisoner established that the procedures followed in Nebraska prison disciplinary proceedings were violative of the due process clause of the Federal Constitution. The Nebraska statute provided that loss of good time was an appropriate sanction for "flagrant or serious misconduct”, and the inmate challenged the Nebraska procedures for determining whether he was, in fact, guilty of such misconduct. The Supreme Court held the Nebraska procedures unconstitutional and set forth minimum standards for the conduct of prison disciplinary proceedings (see, also, Wilkinson v Skinner, 34 NY2d 53, 57-59, and concurring opn, p 63, indicating, before Wolff was decided, that prison disciplinary proceedings must be conducted in a manner consistent with due process).
Petitioner contends, in effect, that Wolff v McDonnell requires that any prison inmate be given a full-scale hearing before a decision is reached on his good time allowance. The argument, however, confuses, if it does not misstate, the Wolff doctrine. In Wolff, a prisoner was charged with misconduct, given short oral notice and an inadequate hearing on the charge, and deprived of good time as a result. The Supreme Court, it is true, stressed the due process rights of prisoners involved in disciplinary hearings. It happens that loss of good time was the disciplinary sanction involved in Wolff, but that is only coincidental. The holding of the Wolff case is narrower *472 than petitioners would have it. The Wolff case held that prisoners brought up on particular charges of misconduct in prison, faced with serious sanctions of whatever kind, are entitled to fair written notice and hearings on those charges (418 US, pp 563-564). It was also said, however, that the Federal Constitution may not be used to impose on the States an inflexible system for enforcing prison discipline (see id., p 563; see, also, Preiser v Rodriquez, 411 US 475, 491-492; Wilkinson v Skinner, 34 NY2d 53, 58-59, supra).
In Wolff, the Supreme Court set forth two basic requirements of due process which must be available to prison inmates charged with misconduct: at least 24 hours advance written notice of the charged violation, and a written statement of the fact finders as to the evidence relied upon and the reasons for the action taken (418 US, pp 563-564). The first requirement is designed to enable the inmate to marshal the facts in his defense and to clarify the charges (id., p 564). The second is to provide a written basis for administrative or judicial review of the actions of the prison authorities, if such review is available (id., pp 564-565).
The court declined to go further and provide prisoners with a right to confrontation and a right to counsel in disciplinary proceedings (id., pp 567-570). Even the right to present documentary evidence and to call witnesses is carefully circumscribed: where institutional safety or correctional goals are at stake, prison officials have discretion to permit such presentation of evidence (id., pp 566-567).
In contrast, disciplinary proceedings in the prisons of this State provide prisoners with procedural protections beyond those mandated by the Supreme Court. Whenever a report of misbehavior is made out, an adjustment committee, made up of three employees, investigates the alleged infraction (7 NYCRR 252.1 [b], 252.2 [a]). The adjustment committee "shall endeavor to obtain from the inmate as full and complete an explanation of his behavior in the situation as possible” (7 NYCRR 252.3 [e]). Then, the committee may either recommend that no action be taken, or require counseling or imposition of relatively minor sanctions to improve the inmate’s behavior (7 NYCRR 252.4, 252.5). The committee may make no formal findings as to whether any violations have occurred (7 NYCRR 252.4 [b] [3]). Since no sanction more severe than the loss of minor privileges can result from adjustment committee action, strict full due process standards need not be *473 met in these informal proceedings (see Wolff v McDonnell, 418 US 539, 571-572, n 19, supra).
If any formal charges are to be made, or if an inmate’s behavior constitutes a danger to life, health, security, or property, a superintendent’s proceeding must be held (7 NYCRR 252.4 [b] [2], [3], 253.1, 253.2). Not only must the inmate be apprised of the charge in writing, but he may choose an employee, from a list, to assist him in the proceedings. Documentary evidence and statements of witnesses gathered by the assisting employee must be presented to the presiding official. (7 NYCRR 253.3.) Moreover, at least one employee with direct knowledge of the incident must be interviewed by the presiding official (7 NYCRR 253.4 [c]). And, of course, a record of the proceedings must be made (7 NYCRR 253.4 [b]). Thus, the superintendent’s proceeding provides vastly greater protection than that required by the Federal Constitution as interpreted in the Wolff case, in that the New York inmate is entitled to representation and to have documentary evidence and statements of witnesses presented to the presiding official.
Finally, provisions are made for review of both adjustment committee decisions and superintendent proceeding dispositions (7 NYCRR 270.1, 270.2; see, also, Matter of Salinas v Henderson, 40 AD2d 939, 940, on the possibility of judicial review if the protective procedures are not followed). This type of administrative review is not required by the Federal Constitution (cf. Wolff v McDonnell, 418 US 539, 565, supra).
Thus, when a time allowance committee is presented with a prison record laden with instances of adjustment committee action and superintendent’s proceedings, it may assume that the prisoner has received, with regard to all discrete charges of misconduct, procedural protections in excess of those mandated by the Wolff doctrine.
The function of the time allowance committee, then, is not the investigation and punishment of particular acts of misconduct, charged or uncharged. Instead the time allowance committee evaluates the inmate’s prison record and recommends the amount of good behavior allowance to be granted not as a punitive sanction but as a standard measuring the progress, capacity, efforts, and achievement by the prisoner during his stay in prison (7 NYCRR 260.3, 261.2). The committee is not to act "in accordance with any automatic rule, but shall appraise *474 the entire institutional experience of the inmate and make its own determination” (7 NYCRR 261.3 [e]).
Of course, since the time allowance committee has before it the inmate’s entire prison record, complete with notations of all charges, hearings, and dispositions, any further hearing would be superfluous. Moreover, since no charges are pending before the time allowance committee, there are no issues* on which a hearing could be held. It would be senseless to require advance notice of violations and a statement of evidence relied upon when there is no new violation and no new evidence. The inmate already knows what violations and evidence were involved in his prison record, since he already has had hearings on those violations, and the dispositions are recorded on his prison disciplinary record.
In summary, the function of the time allowance committee in New York is entirely different from the function of the adjustment committee under the Nebraska prison scheme condemned in Wolff v McDonnell. The Nebraska committee was a disciplinary body; the New York time allowance committee is not (see McGinnis v Royster, 410 US 263, 271-273). The Nebraska committee could withhold good time as a disciplinary sanction; the New York time allowance committee, acting on the basis of the inmate’s prison record supported by the results of prior disciplinary proceedings conducted with due process protections, decides, in its discretion, how much good time an inmate should be awarded (see id., pp 271-276). The Nebraska committee, since it had pending charges before it, had to hold a due process hearing; the New York time allowance committee, with no charges, discrete or general, before it, has no reason to hold a hearing.
In light of the analysis, the result in this case should be obvious. During his time in prison, petitioner misbehaved constantly. He was disciplined by the adjustment committee on numerous occasions and twice his behavior required the intervention of a superintendent’s proceeding. At all of these proceedings, of course, petitioner was afforded all due process rights, and, indeed, many more than were mandated by the court in the Wolff case for punitive disallowances based on acts of serious misconduct.
Faced with petitioner’s rather remarkably bad prison record, the time allowance committee quite reasonably concluded that something less than the maximum possible good time should be allowed. Rather than recommending three years *475 and two months good time, the committee recommended only two years and eight months. Not only was this exercise of the committee’s discretion reasonable, but, under the circumstances, it was very favorable to petitioner.
The reality of petitioner’s attempt in this case is to denude the correctional authorities of discretion in the granting of good time allowances. The attempt flies in the face of studied statutory and regulatory language. It is a penological commonplace that it is necessary to provide positive incentives for good behavior in prison. Good time allowances are one of those incentives, allowances to be based on a prisoner’s overall performance in prison and not on segregated charges of misconduct. No constitutional infirmity in this procedure has been shown either under Wolff (supra) or otherwise.
Thus, none of Amato’s due process rights have been violated. He has had a hearing on each charge of misconduct leveled against him. His prison record has been reviewed by the time allowance committee, and he has been allowed more than 80% of the maximum allowable good time. He is entitled to no more.
Accordingly, the order of the Appellate Division should be affirmed, without costs.
Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur.
Order affirmed.