**Guy Zepth AMBROSE, Luis Gilces, Faruk Abdul Ghani, and Johnny Johnson, detainees of the Bronx House of Detention for Men, Individually and on behalf of all other persons similarly situated, Plaintiffs,**

**v.**

**Benjamin J. MALCOLM, Commissioner of Correction of the City of New York, Robert Kirton, Deputy Warden-in-Command, Bronx House of Detention for Men, and Abraham D. Beame, Mayor of the City of New York, Individually and in their official capacities, Defendants.**

**No. 76 Civ. 190.**

United States District Court,
S. D. New York.

Nov. 22, 1977.

William E. Hellerstein, The Legal Aid Society, New York City, for plaintiffs; Michael B. Mushlin, Norma P. D'Apolito, Robert B. Shapiro, Ellen J. Winner, New York City, of counsel.

W. Bernard Richland, Corp. Counsel, New York City, for defendants; Donald J. Tobias, Asst. Corp. Counsel, New York City, of counsel.

LASKER, District Judge.

On July 26, 1976, this court ordered the defendants (a) to commence a temporary contact visitation program at the Bronx House of Detention (BHD) no later than September 15, 1976 which would afford each member of the plaintiff class at least one—one hour contact visit each week and (b) to submit as soon as practicable a plan for the creation of a permanent facility to insure that every visit at BXHD would be a contact visit as soon as possible and, in no event, not later than May 15, 1977.

The defendants have moved to modify the order of July 26, 1976 to extend the date for completion of permanent contact visiting facilities at BXHD to July 1978. The defendants argue that the procedures of the City and the requirements of law are such that even if the City exerts itself to the utmost it cannot complete the facility before the latter date.

Evidentiary hearings have been held to determine whether it is impossible to complete the project before July 1978, whether the temporary contact visiting facilities (in existence now and at the time the motion was filed) can accommodate a larger number of visitors or visits and what the effect of the proposed extension of time would be.

■ The determinative factor is whether the City has moved as fast as possible to accomplish the requirements of the order. The answer is that the City has moved at the fastest pace *normally* utilized by the City and its agencies, but that that pace is insufficient in the circumstances. The enjoyment of constitutional rights cannot be indefinitely or unreasonably deferred while the City, restricted by bureaucratic procedures, moves at normal glacial speed. The evidence does not establish that the extreme deliberation of the pace is necessary; that is, that the facility in question cannot be completed in less than the two years requested by the City between the date of the original order and July 1978. The City has made no showing that a crash program to complete the job is not possible. It is obligated to undertake such a crash program if necessary.

Somehow or other argument on the motion has degenerated into a dispute as to whether there is a constitutional right to three hours visitation time—which the plaintiffs contend was the "present" level of visitation as of May 1977, when the evidentiary hearings were held, and which the plaintiffs say may not be reduced—or two hours which the defendants say is twice as much as it was before the temporary contact visiting program commenced. It is unnecessary to determine which if either of these figures is correct, but certain observations are in order.

■ The law of this Circuit requires that, except where the security of the institution is at stake, all visits to inmates shall be contact visits. *Rhem v. Malcolm*, 371 F.Supp. 594 (S.D.N.Y.1974), *aff'd*, 507 F.2d 333 (2d Cir. 1974), 389 F.Supp. 964 (S.D.N.Y. 1975), *aff'd*, 527 F.2d 1041 (2d Cir. 1975);

*Detainees of Brooklyn House of Detention for Men v. Malcolm,* 421 F.Supp. 832 (E.D. N.Y.1976). No distinction is made between family visitors and friends outside the family: the distinction is between dependable or undependable visitors and dependable or undependable inmates. Moreover, it is the rule that the visiting time allowed inmates prior to the initiation of contact visiting may not be reduced solely because of the change to a contact system. *Rhem v. Malcolm,* 396 F.Supp. 1195, 1202 (S.D.N.Y. 1975); *United States ex rel. Wolfish v. Levi,* 406 F.Supp. 1243, 1247, 1249 (S.D.N.Y. 1976). Although the cases do not articulate the point, the rationale of the decisions appears to be that the number of hours of visitation afforded to inmates prior to the institution of contact visiting can fairly be assumed to have been set by the correctional authorities at a level which at least *they* considered reasonable, and that to reduce the level because of initiation of contact visiting would attach an impermissible price to the grant of constitutional rights. Nothing in the record here establishes that the schedule in effect at BXHD prior to the initiation of the contact visiting program afforded inmates an exceptionally high amount of visiting time, and accordingly, visiting time may not be reduced because of the establishment of contact visiting.

In sum, the City is obligated to adopt a non-routine crash program if necessary to complete the construction of permanent facilities. In the interim, if required to provide the same number of hours of contact visiting as booth visiting before July 26, 1976, the City shall either (1) expand the number of inmates receiving visits at one time (from 20 to a limit which the evidence demonstrates to be workable, if somewhat crowded, of 24), or (2) expand the number of hours per day or days per week of the visiting schedule or (3) both.

The motion is denied.

It is so ordered.