REGINA COOPER et al., Plaintiffs, and CAROL A. LEWIN et al., on Behalf of Themselves and on Behalf of All Others Similarly Situated, Appellants, v WILLIAM LOMBARD, Individually and as Sheriff of the County of Monroe, et al., Respondents.

Fourth Department September 15, 1978

## APPEARANCES OF COUNSEL

*David Beier* for appellants.

*John D. Doyle, County Attorney,* for respondents.

## OPINION OF THE COURT

DILLON, J.

This is a class action instituted by certain female inmates of the Monroe County Jail. The class certified by Special Term consists of all women inmates of the facility from February, 1974 until the resolution of the action. In 1974 and 1975, 92% of such inmates were pretrial detainees; the others were sentenced prisoners. Despite the difference in inmate status, the plaintiffs have focused upon the class as constituting pretrial detainees. The trial court considered plaintiffs' arguments in that light, as do we.

Of the various conditions of plaintiffs' confinement which formed the bases for the several causes of action under the Federal Civil Rights Act (US Code, tit 42, § 1983), our present concern, as limited by plaintiffs' appeal, is with those portions of the judgment which denied declaratory and injunctive relief with regard to visitation restrictions, recreational opportunities and disciplinary proceedings, and which also denied plaintiffs' request for attorneys' fees.

The Monroe County Jail is a modern detention facility which has been in use since its construction was completed in April, 1971. It was originally designed to house only nonsentenced prisoners but because of the closing of the antiquated and inadequate county penitentiary in the fall of 1971, it became necessary to include sentenced prisoners among the facility's population. Consequently, a section of the county jail which had been intended for the use of female prisoners was employed for the housing of the unanticipated additional male population. In order to accommodate female inmates, the county arranged to use existing lockup facilities on the third floor of the abutting City Public Safety Building. Direct physical access was provided to and from the Monroe County Jail, and since March, 1972, with the approval of the State Commission of Correction, female inmates have been housed in the converted city facilities. The female confinement area consists of 26 cells, including two isolation units, and two day rooms.

During 1974 the average daily female population was 20 and in 1975 it was 17. At no time during those years did the population exceed 31.

Initially, we note that the circumstances of plaintiffs' confinement may not be described as intolerable or inhumane (compare, e.g., *Rhem v Malcolm,* 371 F Supp 594, affd in part 507 F2d 333, on remand 396 F Supp 1195, affd 527 F2d 1041; *Inmates of Suffolk County Jail v Eisenstadt,* 360 F Supp 676, affd 494 F2d 1196, cert den 419 US 977; see *Hutto v Finney,* 437 US 678). There has been no demonstration that any aspect of their incarceration offends the cruel and unusual punishment clause of the Eighth Amendment.[1] Indeed, according to a study done by a jail consultant of the American Correctional Association, the Monroe County Jail is a "well operated and managed facility in which there is total effort to meet the needs of the prisoners."[2]

1. When this action was instituted, the complaint included a cause of action for the alleged willful failure of defendants to provide essential medical care to female inmates. We found that the allegations of the complaint sufficiently stated a cause of action under the Federal Civil Rights Act *(Cooper v Morin,* 50 AD2d 32). While the denial to prisoners of adequate medical treatment, if shocking to the conscience, may constitute cruel and unusual punishment (see *Robinson v California,* 370 US 660; *Rochin v California,* 342 US 165; *Cooper v Morin, supra),* that issue has been removed from the case by the entry of a consent order which now regulates the delivery of health care services to women inmates.

2. At the behest of county officials, a survey of the jail's facilities, programs and staff was conducted in 1974 by the American Correctional Association under a Law Enforcement Assistance Act contract. The survey related to conditions affecting both male and female inmates and the report thereon, signed by Anthony S. Kuharich, jail consultant, was received in evidence. It concluded:

"Although this jail is a maximum security facility, the administration and personnel are program and people oriented. They are well qualified and have a professional and positive attitude toward prisoners.

"The security procedures in this facility are good, but there is need for additional jail staff.

"This institution is in very sanitary condition.

"The medical needs of the prisoners are being adequately met.

"Food preparation and management are under the direction of a commercial firm. The quality and quantity of the meals served are satisfactory.

"Disciplinary procedures are clearly outlined, and careful attention is given to prisoners' rights.

"The Director of Rehabilitation and the three counselors with the aid of many volunteers from community agencies are providing the prisoners with a variety of correctional treatment programs.

"The gym, located on the fifth floor, is in constant use for the physical and mental well-being of the prisoners.

"The jail activities are for the most part alleviating prisoner idleness.

"This is a well operated and managed facility in which there is total effort to meet the needs of the prisoners. The addition of four rehabilitation counselors to interview

To the extent that plaintiffs' causes of action are premised upon claimed violations of the Eighth Amendment, they were properly rejected by the trial court and have not been further advanced on this appeal. Our attention, then, is directed to plaintiffs' assertions that certain restrictions imposed upon them by virtue of their incarceration deprived them of due process and equal protection under the Fourteenth Amendment.

It is largely in the last decade that prisoners have sought relief from conditions of confinement on the grounds other than the cruel and unusual punishment clause of the Eighth Amendment. Judicial review of such complaints requires in the first instance a recognition that " '[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.' *Price v. Johnston,* 334 U.S. 266, 285 (1948); see also *Pell v. Procunier,* 417 U.S. 817, 822 (1974); *Wolff v. McDonnell,* 418 U.S. 539, 555 (1974). The fact of confinement and the needs of the penal institution impose limitations on constitutional rights" *(Jones v North Carolina Prisoners' Union,* 433 US 119, 125).

It has been repeatedly held that the courts should defer to the discretion of correction officials in matters concerning prison administration and the needs of institutional security (see, e.g., *Meachum v Fano,* 427 US 215, 228-229; *Preiser v Rodriguez,* 411 US 475, 491-492; *Cruz v Beto,* 405 US 319, 321; *Johnson v Avery,* 393 US 483, 486; *Wilkinson v Skinner,* 34 NY2d 53, 62). This does not imply, however, that either sentenced prisoners or pretrial detainees are stripped of all constitutional protection. Prisoner complaints relating to jail restrictions or procedures must be examined "in terms of the legitimate policies and goals of the corrections system, to whose custody and care the prisoner has been committed in accordance with due process of law" *(Pell v Procunier, supra,* p 822), and the courts will intervene "to put a stop * * * to practices that are unconstitutional or illegal" *(Wilkinson v Skinner, supra,* p 62).

Plaintiffs contend that they are entitled to contact visitation; expanded periods of visitation; outdoor recreation; access to the gymnasium equal to that afforded male prisoners; and

and work with the nonsentenced prisoners and the development of a sound classification system would immensely upgrade the operation of this jail."

the promulgation of rules designed to guarantee that a sanction imposed for violation of a jail rule is proportionate to and reflective of the nature of the violations.

■ Insofar as plaintiffs' claims are premised upon an alleged denial of equal protection, we find them to be without merit. Plaintiffs' argument is the product of a comparison between conditions of confinement of sentenced prisoners in State correctional facilities and those afforded to plaintiffs in the Monroe County Jail. They conclude that since a judgment of conviction has not been imposed upon them, the conditions of their confinement must, as a matter of equal protection, be of equivalent or higher quality than those enjoyed by State prisoners.

An obvious impediment to plaintiffs' position arises from their reliance upon the treatment of members of a class distinct from their own. Significantly, in *McGinnis v Royster* (410 US 263), it was acknowledged that the purpose, usage and availability of State prisons markedly differ from that of county jails. Those differences afforded a rational basis for the disparate treatment complained of in *McGinnis* and in our view serve to proscribe relief under the equal protection clause in this case (see *Collins v Schoonfield,* 344 F Supp 257, 285).

We turn then to a consideration of plaintiffs' claims under the due process clause of the Fourteenth Amendment. It is argued that the restrictive nature of visitation rights at the Monroe County facility constitutes an unconstitutional limitation upon the liberty of pretrial detainees.

The parties stipulated that the visiting hours for pretrial detainees are from 1:00 P.M. to 4:30 P.M. on Tuesdays, Thursdays and Sundays, and that each visit may be limited to 10 minutes. Inmates and visitors are separated by a steel wall and a glass window. They communicate by use of a telephone system through which it is sometimes difficult to hear. There was also evidence that the glass window is at a level which impedes or precludes its use by those of short physical stature.

■ There is abundant authority that the failure to provide a program of contact visitation constitutes a deprivation of the constitutional rights of pretrial detainees (see, e.g., *Miller v Carson,* 563 F2d 741; *Rhem v Malcolm,* 507 F2d 333; *Jordan v Wolke,* 444 F Supp 599; *Ambrose v Malcolm,* 440 F Supp 51; *O'Bryan v County of Saginaw,* 437 F Supp 582; *Forts v Malcolm,* 426 F Supp 464; *Mitchell v Untreiner,* 421 F Supp

886; *Detainees of Brooklyn House of Detention for Men v Malcolm,* 421 F Supp 832; *Inmates, D.C. Jail v Jackson,* 416 F Supp 119; *Dillard v Pitchess,* 399 F Supp 1225). Additionally, the United States District Court for the Western District of New York has recently held that contact visitation in the Monroe County Jail "is required by law" and has directed the Monroe County Sheriff to submit to the County Manager an estimate of the cost of providing contact visitation for male inmates of that facility (*Marcera v Chinlund,* US Dist Ct, WDNY, June 5, 1978 [BURKE, J.]; and see *Marcera v Chinlund,* 565 F2d 253).

Although plaintiffs' contention that they are entitled to contact visitation is unsupported by any authority binding upon this court, it is nonetheless our view that the wholesale denial of contact visitation to all pretrial detainees is neither rationally nor constitutionally supportable. Indeed, the record reveals not that prison administrators oppose the concept of contact visitation but rather that its implementation will present administrative and security problems which may only be alleviated by the expenditure of additional public moneys to renovate facilities and provide additional staff.[3] While these are legitimate public concerns, they may not be employed as a basis for the denial of fundamental rights to citizens who stand unconvicted of any crime and who, except for the inability to post bail, would enjoy unfettered liberty in their association and contact with loved ones and friends. Thus, the complete failure of those responsible for the operation of the Monroe County Jail to provide qualified female inmates with contact visitation constitutes an impermissible restraint upon their liberty.[4]

We do not hold, however, that all such prisoners are to be afforded contact visitation rights without regard to considerations of institutional stability and security. To do so would amount to an unjustifiable incursion into matters which are peculiarly within the expertise of those entrusted with prison administration (cf. *Jones v North Carolina Prisoners' Union,*

---

3. Sheriff Lombard testified that in anticipation of liberalized visitation practices, including contact visitation, he has prepared and submitted to the Monroe County Administration and Legislature, a cost analysis and proposals for renovation of the jail.

4. A program of contact visitation should allow inmates to embrace, kiss, touch or shake hands with their visiting spouses, children, loved ones or friends. Such visits must occur in open view and any conduct offensive to the ordinary standards of public behavior is not to be permitted.

433 US 119, 136, *supra).* The method and manner of the implementation of an acceptable visitation program must be left to the judgment of those responsible for the efficient and purposeful operation of the detention facility.

While the day-to-day management of such a facility is entrusted to local officials (see Correction Law, § 500-c; County Law, § 217), the power to adopt standards and rules regulating the operation of a county jail is conferred upon the State Commission of Correction (Correction Law, § 45, subd 6).

It was recently noted by the Court of Appeals that "it would be of great benefit to both the courts and the detention centers themselves if the officials within were guided by a comprehensive set of carefully drafted and closely adhered to rules and regulations relating to prisoners' rights, conditions of detention centers, and activities of prison officials" *(Wilkinson v Skinner,* 34 NY2d 53, 62-63, *supra).* Consistent with that suggestion, the State Commission of Correction adopted, effective October 1, 1976, minimum standards and regulations for the conduct of prisoner visitation in county jails (9 NYCRR Part 7008). Those regulations provide that contact visitation shall be permitted (9 NYCRR 7008.2 [b]; 7008.6). While the implementation of part 7008 has been preliminarily enjoined (see *McNulty v Chinlund,* 62 AD2d 682), it is noteworthy that in *McNulty* prisoners were not parties to the action and the court did not address the precise issues presented here.

In any event, we hold only that a program of contact visitation for female detainees of the Monroe County Jail must be instituted within a reasonable period of time. While the lack of finances may not be employed as a basis for the denial of constitutional rights, economic factors may be taken into account in determining the manner and method used to provide contact visitation (cf. *Bounds v Smith,* 430 US 817). Thus, the defendants must be afforded a reasonable opportunity to arrange for whatever structural alterations and additional staff are required for the implementation of a constitutionally acceptable visitation program.

Since the "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform" *(Procunier v Martinez,* 416 US 396, 405; see *Jones v North Carolina Prisoners' Union,* 433 US 119, 126, *supra; Wilkinson v Skinner,* 34 NY2d 53, *supra),* it is the jail officials and not the trial court who should plan and supervise contact visits *(Miller v Carson,* 563 F2d 741, 749, *supra).* It is necessary,

however, that the matter be remitted so that the trial court, consistent with this decision, may insure that a contact visitation program is introduced within a reasonable time.

The other issues raised by plaintiffs have not been shown to be of constitutional dimension. Their claim that the duration of their visitation periods should be increased is a matter properly left to the judgment of the defendants. The establishment of particular visitation periods is obviously necessary to the internal order of the facility and in the absence of a showing that the present schedule is patently unreasonable, we will not intervene.

Similarly, plaintiffs' arguments with respect to the lack of outdoor recreational facilities and unequal access to the jail gymnasium are without merit. There is no evidence to support a claim that the mental or physical well-being of female inmates is not adequately safeguarded by current practices. The Monroe County Jail has an excellent exercise facility which is well equipped, professionally staffed, available to both male and female inmates on a reasonably equitable basis, and offers a variety of physical sports activities. The gymnasium has a skylight which is opened in fair weather to let in sunshine and fresh air. Female inmates have access to the gymnasium on Monday and Wednesday of each week, and the evidence indicates that such access is sufficient for health purposes.

Moreover, physical exercise cannot be isolated from other factors affecting physical and mental health. Female inmates of the Monroe County Jail are offered participation in a variety of arts, crafts, entertainment, religious and counseling programs on each day of the week. Indeed, the diversity of available activities is such that various self-improvement, health and educational programs for women were discontinued due to lack of inmate interest and participation. Although the State Commission of Correction requires that outdoor recreation be made available in county jails (9 NYCRR 7028.1 *et seq.*), we do not find on this record that any expansion of recreational opportunity for female prisoners of the Monroe County Jail is constitutionally mandated.

We next address plaintiffs' demand for revision of the disciplinary rules. Those rules now permit the imposition of a range of sanctions based upon an evaluation of the inmate's attitude and general adjustment to the discipline and order of the facility, as well as the facts and circumstances of the

infraction. These are proper considerations and in view of plaintiffs' failure to establish any constitutional necessity for the promulgation of specific sanctions to be imposed for particular violations, there need be no additional restrictions placed upon the defendants' ability to maintain order and security in the jail. It is sufficient that the actions of the defendants in imposing punishment or withholding privileges are subject to review *(Wilkinson v Skinner,* 34 NY2d 53, 57, *supra).*

■ Finally, plaintiffs contend that since they have prevailed in this suit, they are entitled to attorneys' fees. Under both the Federal and State statutes, however, the issue is one addressed to the discretion of the court (see US Code, tit 42, § 1988; CPLR 909). We find no abuse of the exercise of that discretion by the trial court, and we do not disturb its determination.

The judgment should be modified in accordance with this opinion and the matter should be remitted to the trial court for further proceedings consistent herewith; the judgment should otherwise be affirmed.

MARSH, P. J., MOULE and SCHNEPP, JJ., concur; DENMAN, J., not participating.

Judgment unanimously modified, and, as modified affirmed, without costs, and matter remitted to Monroe Supreme Court, PROVENZANO, J., for further proceedings, in accordance with opinion by DILLON, J.