Gabrielli, J.
(dissenting). I am compelled to dissent. The majority has today adopted the position that restrictions on the liberties of pretrial detainees must meet the exacting standard of "compelling governmental necessity” in order to be sustained. Accordingly, the majority has held not only that there is a constitutionally protected right to "contact visits”, but also that such visits must be substantially longer than 10 minutes duration in order to pass constitutional muster. Since I can find no source for such "rights” in either the Federal or the State Constitution, I am unable to join in the conclusions reached by my colleagues.
Any analysis of the due process rights of pretrial detainees must begin with the Supreme Court’s decision in Bell v Wolfish (441 US 520). In that case, the Supreme Court held *84 that the presumption of innocence, which inheres in the rights of citizenship, does not in itself give rise to any substantive right of the pretrial detainee to be "free from conditions of confinement that are not justified by compelling necessity” (441 US, supra, at p 532). This is so because the "presumption of innocence”, as it is popularly called, is merely a shorthand means of describing the fundamental principle that an individual cannot be punished under our American system of criminal jurisprudence unless the State comes forward with evidence sufficient to convince the trier of fact of his guilt (see Taylor v Kentucky, 436 US 478, 483-484). The presumption has no application, however, when an individual is deprived of liberty prior to trial and the State seeks to regulate the conditions of his confinement to accomplish State purposes unrelated to the individual’s ultimate punishment. Where such is the case, the Supreme Court has stated, the detainee has no right to have the prison regulation in question tested against the strict standard of "compelling necessity”. Instead, the Supreme Court has said, due process demands only that a particular restraint on a detainee’s liberty be reasonably related to a legitimate governmental goal, such as the government’s understandable objective of maintaining the security of its jail facilities (441 US, supra, at pp 535-539).
Recognizing that the prison regulations at issue here would meet this less exacting standard of review, the majority attempts to find a basis for applying a higher level of judicial scrutiny by invoking the due process clause of the State Constitution (NY Const, art I, § 6) as well as the "fundamental right to marriage and family life”. The majority notes that the rules of the Monroe County jail which proscribe "contact” visitation impair the detainees’ ability to maintain normal family relationships and, on the basis of this fact, concludes that the regulations must fall in the absence of a "compelling” justification.
The problem with the majority’s position is that it overlooks the simple fact that "[ljawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by * * * our penal system” (Price v Johnston, 334 US 266, 285; see Jones v North Carolina Prisoners’ Union, 433 US 119, 125; Wolff v McDonnell, 418 US 539, 555-556). Indeed, although individuals who are incarcerated do not forfeit all of their constitutional rights as citizens *85 (see, e.g., Meachum v Fano, 427 US 215; Wolff v McDonnell, 418 US 539, supra; Pell v Procunier, 417 US 817; Cruz v Beto, 405 US 319), there are certain personal freedoms and conveniences that must be sacrificed as a necessary incident to the loss of liberty.
Chief among these are those freedoms and privileges that are derived from the guarantee of a "right of privacy” that is implicit in our Federal Constitution (see, e.g., Roe v Wade, 410 US 113; Boddie v Connecticut, 401 US 371; Griswold v Connecticut, 381 US 479). It goes without saying that when an individual is imprisoned, there is a drastic curtailment of his accustomed relationships with family and friends. His or her right to bear and raise children, for example, is dramatically impaired by the simple fact that he or she has been removed from the home and prevented from fulfilling the role of a parent. Similarly, confinement in an institution by its very nature results in an interruption of the normal marital relationship. To the extent that these restrictions impinge upon "fundamental” constitutional rights, they are justified in the case of the pretrial detainee by the compelling governmental interest in insuring his appearance at trial (see Stack v Boyle, 342 US 1, 4), as well as by the relatively short duration of his confinement. Once we accept the premise that an individual may be temporarily detained upon a finding of probable cause (see Gerstein v Pugh, 420 US 103, 114), it follows that the rights to privacy and family life, to the extent that they exist, must give way to the practical realities of his confinement.
Among these realities is the formidable task faced by those who are charged with the daily responsibility of maintaining discipline, order and security in facilities which house short-term detainees. Indeed, it has been noted that the problems inherent in maintaining security in a pretrial detention facility may very well be greater than those involved in operating a long-term correctional institution (see Bell v Wolfish, 441 US, supra, at p 546, n 28). In view of the complexity of the task faced by prison administrators, I deem it unwise for this court to attempt to enforce its views of "enlightened” penal policies by elevating them to the status of constitutional guarantees.
As we have observed on an earlier occasion, "[t]he role of the courts is not to put a stop to practices that are unwise, only to practices that are unconstitutional or illegal” (Wilkinson v Skinner, 34 NY2d 53, 62). Whatever Judges may think *86 about the desirability of affording prisoners extended "contact” visitation privileges, we are not free to substitute our judgment for that of prison administrators in the absence of some impairment of a substantial constitutional right. Notwithstanding the majority’s efforts to locate such a right in the due process clause of our State Constitution (NY Const, art I, § 6), I remain unconvinced that the privilege of "contact” visitation rises to the level of constitutional significance. On the one hand, the majority states unequivocally that the rule prohibiting contact visits for pretrial detainees does not offend the due process clause of the United States Constitution. On the other hand, the majority has blithely concluded that the equivalent clause in our State Constitution, which employs identical language, somehow compels the opposite conclusion. In view of the identity in language and purpose of the two clauses, I can find no justification for using our State due process clause as a basis for creating a "constitutional” right solely because we are dissatisfied with the result reached in a particular Supreme Court decision under the Federal due process clause.
Since I am unable to find a source for the "rights” claimed here, either in the due process provisions of the State and Federal Constitutions or in the "fundamental right to marriage and family life”, I would vote to modify the order of the Appellate Division by reversing so much thereof as requires prison officials to institute a program of "contact” visits.
Judges Jones, Wachtler and Fuchsberg concur with Judge Meyer; Chief Judge Cooke concurs in result in a separate memorandum; Judge Gabrielli dissents and votes to modify in a dissenting opinion in which Judge Jasen concurs.
Order modified, with costs to plaintiffs, in accordance with the opinion herein and, as so modified, affirmed.