John Carroll Young, J.
The above claims, based on alleged negligence in the maintenance and operation of the New York State Thruway, were duly filed and have not been assigned or submitted to any other court or tribunal for audit or determination.
The claims arose by reason of a collision between a 1964 Buick station wagon automobile and a tractor trailer, which occurred at about 1:00 a.m. on November 4, 1964 on the westbound lane of the New York State Thruway approximately at *1075 milepost 313.4 within the area known as the Montezuma Swamp.
These claims were tried jointly with the claim of Georgia E. Harvey, as Administratrix of the Estate of Max W. Harvey, deceased, (Claim No. 44828) and the claim of Gene Adams Refrigerated Trucking Service, Inc. (Claim No. 44801); these claims arose as a result of another accident that occurred about two hours previous to this Rindfleisch accident, that is, at about 11:00 p.m. on November 3, 1964, about at milepost 314.4 on the eastbound lane of said Thruway; said other accident resulted in the death of said Max W. Harvey and extensive damage to the tractor trailer he was driving, which was owned by his employer, the said corporate claimant.
This court, in a separate decision in the Harvey and Adams cases filed with and bearing even date herewith, has found the State of New York and the New York State Thruway Authority guilty of negligence which was the proximate cause of said Harvey accident and has granted awards to both claimants Harvey and Adams.
It is undisputed that there existed on the Thruway at and prior to the time and place of this accident a combination of fog and smoke — referred to as “smog” — which reduced the visibility to practically “ zero ”; this condition had periodically existed for some two weeks prior to November 4, 1964 and several accidents had occurred by reason thereof; the State of New York and the New York State Thruway Authority had had ample notice of this condition prior to said date.
As applied to these Rindfleisch claims, this court makes the same findings of negligence on the part of the State and the said Thruway Authority concerning their failure to give proper warnings to motorists of the dangerous conditions brought about by said 1 ‘ smog ’ ’ and the other acts of negligence charged to said defendants in the Harvey and Adams decision (59 Misc 2d 1079) and such findings are incorporated herein by reference; in the present claims, however, the element of warning cannot be made the basis of a claim for the reason that, in the manner hereinafter stated, the presence of the smog condition became known to both of these claimants prior to the occurrence of the accident out of which these claims arose; it seems that the only basis of a valid claim by these claimants would necessarily rest on other negligence of the defendants, such as the failure of the defendants to convoy traffic through the danger zone or their failure to close that portion of the Thruway until the danger was past.
Both claimants Rindfleisch testified that they were proceeding westerly along the westbound lane of the Thruway, after *1076 both had completed their employment on night shifts at separate plants of the General Electric Company in or near Syracuse; both their work periods had ended at midnight November 3, 1964.
Claimant Rudolf Rindfleisch, driving his 1964 Buick station wagon, after leaving the place of his employment, had proceeded to meet his wife, claimant Mary J. Rindfleisch, at her place of employment and both proceeded westerly along the Thruway to Weedsport where they picked up their five-year-old daughter at the home of the mother of Mary J. Rindfleisch; thereafter they returned to the Thruway and proceeded westerly thereon intending to go to their own home at Waterloo, N. Y. Claimant Rudolf Rindfleisch was driving, and claimant Mary J. Rindfleisch was seated in the front seat at his right side; their daughter was in a rear seat.
As they proceeded westerly at about 60 to 65 miles per hour both claimants Rindfleisch testified they suddenly, and without prior warning, came upon and drove into a cloud or bank of smog in which their visibility immediately became zero; that before their vehicle could be brought to a stop they had run off the traveled portion of the highway and into the mall or median dividing the westbound and eastbound lanes where claimant Rudolf Rindfleisch brought it to a stop without incident; thus both claimants herein were fully informed of the existence of the smog condition, and the question as to whether or not the defendants herein gave notice thereof becomes of no importance.
Claimant Rudolf Rindfleisch, after coming to a stop in the mall and noticing he was off the road, backed his vehicle, got back on the road and resumed his journey westerly along the Thruway, traveling thereafter, however, in the passing lane, where he stated he considered it safer since the mall is usually flat, and he wished to avoid running off the shoulder to the right of the driving lane which usually slopes downward. He stated he continued to drive at about five miles per hour through this smog that was so impenetrable that he could see only about one foot ahead of his headlights, and was able to guide himself only by looking out of his window aud observing the white line painted along the side of the pavement; they proceeded in this manner, stopping at times and then continuing, for about one-half to three-quarters of a mile.
Claimant Mary J. Rindfleisch, after they had so resumed their progress, remained seated on the front seat beside her husband but stated she was unable to see whether their car was in the driving lane or in the passing lane, but knew only that they were on the paved portion of the highway as she ‘ ‘ could tell that *1077 by the tires She stated that she was leaning forward with her left hand on her seat belt and her right hand on the door handle or arm guard, as she stated ‘ ‘ looking to see what I could see in front of us ”.
Both claimants stated there came a time when they observed what they believed to be a red reflection ahead of them and that claimant Rudolf Rindfleisch turned his wheel sharply to the right to bypass it and their car came into collision with a truck; Mary J. Rindfleisch stated that when this occurred her husband 1 ‘ pushed to his right ’ ’ to keep her ‘ ‘ from going through the windshield ’ ’ and put his right arm out in front of her to stop her going forward; that she had previously had her hand on the clasp of the seat belt and that she may have unfastened it, as she, at the time of this collision, either jumped out or was thrown out of the car and next found herself lying on the pavement; as a result of this occurrence she sustained injuries as hereinafter mentioned.
The proof showed that the Rindfleisch car had collided with the rear of a tractor trailer which was in the act of passing two other vehicles then standing in the driving lane, they having previously been involved in another accident that had occurred at about 12:30 a.m. ; the State Police had been called also to this prior accident and a State Police officer was present at this scene prior to the time the Rindfleisch car arrived there; the proof showed that this officer, waving a ‘ ‘ fusee ” as a warning, was endeavoring to direct traffic around the standing vehicles that had been involved in such prior accident, and that as a truck operated by one Georges Jeannetot was in the act of passing such vehicles, the Rindfleisch car collided with the rear of the Jeannetot truck.
The court finds that the defendants herein were guilty of negligence that contributed to and constituted a concurring proximate cause of said accident involving the Rindfleisch automobile; the Harvey accident had occurred at about 11:00 p.m. at least two hours prior to the Rindfleisch accident; the State Police investigated the Harvey incident and were fully aware of the extremenly dangerous driving conditions resulting from the smog, and the complete lack of visibility which existed for a distance of about two miles through said Montezuma Swamp area; under such circumstances, it was the duty of the State Police to either entirely close that portion of the Thruway or to stop traffic approaching from either end of the affected area and to convoy the traffic through the smog under police direction and protection.
*1078 Although the court thus finds the defendants guilty of negligence, the court is constrained to find that claimant Rudolf Rindfleisch was also guilty of contributory negligence which was also a concurring proximate cause of this accident; the nature of the damage to his vehicle, and his failure to bring it to a stop after observing what he described as a “ red reflector ” indicates that he failed to operate his automobile with due care under such extreme circumstances; as a result of this accident he was charged with violation of the Vehicle and Traffic Law for ‘1 Following too closely ’ ’, to which charge he pleaded guilty on said 4th day of November, 1964 before Justice of the Peace Edward Guyder at Weedsport, New York; the only reasonable conclusion that the court can draw is that he was proceeding at a rate of speed that was unsafe under the circumstances, and that he failed to have his vehicle under proper control.
There was, however, no proof of any contributory negligence on the part of claimant Mary J. Rindfleisch; it cannot be said that her mere act of unprotestingly riding with her husband constituted negligence that contributed to the accident and to her injuries; they were met with an emergency not of their making; to endeavor to overcome this emergency by removing from the danger area was not in and of itself negligence.
The court finds that the State of New York and the New York State Thruway Authority were guilty of negligence which was a concurring proximate cause of the accident in which claimant Mary J. Rindfleisch was injured and that she was free of any negligence contributing thereto and is entitled to an award herein.
As a result of this accident, claimant Mary J. Rindfleisch received personal injuries including a blow on the head resulting in a large contused swollen area over the right occipital parietal area and was caused to become temporarily unconscious and to suffer a cerebral concussion; she received contusions of the arms, chest, right leg and the pelvis and a possible contusion of the bladder; as a result of these injuries she suffered pain, including headaches, and complained of dizziness and nausea. She was taken to the hospital at Waterloo, N. Y. where she remained for five days; although her physician testified he recognized that she had not entirely recovered, she was allowed to return to her home on November 9, 1964 on a trial basis but with instructions to return if her nausea and headaches continued; she was readmitted to said hospital on November 12,1964 because of persisting symptoms of post concussion syndrome; she remained there until November 15, 1964 when she was discharged, although still demonstrating such *1079 symptoms to a lesser degree. She testified that she still continued to have headaches at the time of the trial and that she continues to have difficulty in focusing her eyes, which she never experienced prior to the accident described above.
The court finds that claimant Mary J. Rindfleisch is entitled to an award in the amount of $2,000 for all damages of every name and nature sustained by her as a result of said accident.
The motions made by the Attorney-General to dismiss her claim upon which decision was reserved on the trial are hereby denied.
The motions made by the Attorney-General to dismiss the claim of Rudolf Rindfleisch, upon which decision was reserved on the trial, are hereby granted.
The claim of Rudolf Rindfleisch is hereby dismissed.