OPINION OF THE COURT
Gerard M. Weisberg, J.
This is an application to file a late claim pursuant to subdivision 6 of section 10 of the Court of Claims Act.
The claim is for conscious pain and suffering and wrongful death of Candido Santana,"and is brought by Haydee Santana, decedent’s widow, as administratrix of his estate, and also individually for loss of consortium. Mrs. Santana will hereinafter be referred to as movant.
Movant alleges that on October 25, 1975 at approximately 5:30 a.m., Candido Santana was walking southbound on the centerline of the southbound lane of the New York State Thruway, Interstate 87, hereinafter referred to as Thruway, when he was struck by a tractor trailer, also traveling southbound. The tractor trailer was owned by Oneida Motor Freight, Inc. and operated by Glenn S. Decker. Movant’s papers do not disclose what Mr. Santana’s purpose was, if any, in being on the Thruway. Mr. Santana died later that same *4 morning at approximately 7:45” a.m., leaving a wife and three children surviving.
The liability of the State of New York and the New York State Thruway Authority, hereinafter referred to as the State and the authority respectively, is predicated upon the allegation that at approximately 4:15 a.m. on October 25, 1975, Mr. Santana’s presence on the Thruway was reported to the toll collector of the Woodbury toll station, by Mr. Charles Eidel of Gardiner, New York, and possibly by others. Movant contends that either or both defendants were negligent in failing to remove Mr. Santana from the Thruway after learning of his presence thereon.
Letters of administration were granted to Haydee Santana on June 3, 1976. The present motion, accompanied by the proposed claim, as required by subdivision 6 of section 10 of the Court of Claims Act, was filed on July 25, 1977.
Subdivision 2 of section 10 of the Court of Claims Act states: "[a] claim by an executor or administrator of a decedent who left him or her surviving a husband, wife or next of kin, for damages for a wrongful act, neglect or default, on the part of the state, by which the decedent’s death was caused, shall be filed within ninety days after the appointment of such executor or administrator, unless the claimant shall within such time file a written notice of intention to file a claim therefor in which event the claim shall be filed within two years after the death of the decedent. In any event such claim shall be filed within two years after the death of the decedent.”
Having failed to comply with these statutory requirements, movant would have this court exercise its discretion in permitting a late filing pursuant to subdivision 6 of section 10 of the Court of Claims Act. This recently amended statute (L 1976, ch 280, eif Sept. 1, 1976) provides, in part, as follows: "[i]n determining whether to permit the filing of a claim pursuant to this subdivision, the court shall consider, among other factors, whether the delay in filing the claim was excusable; whether the state had notice of the essential facts constituting the claim; whether the state had an opportunity to investigate the circumstances underlying the claim; whether the claim appears to be meritorious; whether the failure to file a timely claim or notice of intention resulted in substantial prejudice to the state; and whether the claimant has any other available remedy.”
The court has examined movant’s proposed claim and finds *5 that it satisfies the requirements of section 11 of the Court of Claims Act in that it sets forth the time and place of the occurrence, the nature of the claim, the items of damage and the total sum demanded. Additionally movant’s application was filed within two years of Candido Santana’s death as required by subdivision 2 of section 10 of the Court of Claims Act.
In applying the criteria set forth in subdivision 6 of section 10 of the Court of Claims Act, the court must weigh each factor specifically enumerated therein as well as any others which it deems relevant. These factors need not be found to exist conjunctively, as was the case under former subdivision 5 of section 10 of the Court of Claims Act. (Sessa v State of New York, 88 Misc 2d 454, 458; De Marco v State of New York, 43 AD2d 786, affd 37 NY2d 735.) As stated by Judge DeIorio in Walach v State of New York (91 Misc 2d 167, 170): "the purpose of the amendatory legislation was to vest broader discretion in the courts to permit late filings than theretofore existed * * * the legislative aim, purpose and intent was to create a fairer and more logical late claim judicial procedure which would at least obviate (if not replace) the resort to private bills for access to this court, as theretofore existed.”
The removal of the former restrictions on judicial discretion by the Legislature indicates to this court a strong concern that litigants with meritorious claims be afforded their day in court. With these principles in mind, the court will discuss the individual factors enumerated in subdivision 6 of section 10 of the Court of Claims Act as they apply to each defendant.
The first factor which the court must consider is whether the delay in filing is excusable. A claim, or a notice of intention to file a claim, should have been filed within 90 days of Mrs. Santana’s appointment as administratrix on June 3, 1976. Since neither of these documents was filed, the claim was barred after September 1, 1976. Under subdivision 6 of section 10 of the Court of Claims Act, the time period to which the applicant’s excuse must relate, in a claim such as this, is the 90-day period from the granting of letters of administration. The court may, however, consider the timeliness of the motion for permission to late file, as bearing on the issue of prejudice to the defendant. (Walach v State of New York, supra.)
Movant’s excuse is that during the 90-day period she was *6 unaware of the facts which give rise to her claim against these defendants, and that she did not become aware of these facts until May 18, 1977. As previously indicated, movant’s contention is that prior to the accident, Mr. Charles Eidel reported to a toll collector that Candido Santana was walking on the Thruway, and that having received this information, the State and/or the authority were under a duty to remove Mr. Santana and thereby prevent the accident. Movant’s attorney states that he was unaware of Mr. Eidel’s role in the events surrounding Mr. Santana’s death, until he received a transcript of Mr. Eidel’s testimony at a hearing conducted by the New York State Department of Motor Vehicles. At this hearing, held on March 9, 1976 in Goshen, New York, Mr. Eidel allegedly testified that he and other individuals reported Mr. Santana’s presence on the Thruway at various intervals prior to the accident. Movant’s attorney received the transcript on May 18, 1977, and thereafter filed the present motion on July 25, 1977.
In opposition to these contentions the Attorney-General argues that movant’s attorney had been given a police accident report on March 2, 1976, which contained essentially the same information regarding Mr. Eidel’s participation as does the transcript. Movant contends that the accident report did not set forth the essential facts upon which the proposed claim is based. This accident report reads in pertinent part as follows:
"Vehicle #1 Southbound — Pedestrian walking south on centerline of roadway, struck by Vehicle #1 — pedestrian reported walking north in southbound lanes, by wittness [sic] prior to accident
"Wittness [sic] Charles Eidel, Box 99 Old Ford Rd Gardiner, NY 12525.”
Whether movant’s lateness in filing is excusable depends primarily upon the court’s interpretation of the above-quoted language in the accident report. The court finds this language to be ambiguous with respect to movant’s allegation that the Woodbury toll taker was notified of Mr. Santana’s presence on the Thruway. The phrase "prior to accident” is ambiguous since it could as well relate to (1) when the report was made, or (2) when Mr. Santana was observed walking on the roadway. There is no indication in the accident report itself of to whom the facts were reported, and certainly no mention is made of any toll taker. It would have been reasonable to *7 assume that the information was "reported” to the officer who filled out the accident report. The court finds that the accident report did not apprise movant’s attorney of the substance of Mr. Eidel’s later testimony. Having read this witness’ testimony at the Motor Vehicle Department hearing, one might be inclined to give a different meaning to the words on the accident report, but the court must judge the reasonableness of movant’s attorney’s conduct in light of what he knew at the time he read the report. In the absence of any reference to a toll taker, movant’s attorney had no basis to assume the existence of negligence by an employee of the State or the authority. Movant’s attorney acted reasonably in trying to contact Mr. Eidel, but this witness refused to co-operate with him. Since counsel acted diligently to investigate the claim, but was nevertheless unaware of essential facts in support thereof, the court finds that movant’s failure to file is excusable.
The second factor which the court must consider is notice. Movant’s contention in this regard is that the authority and the State had notice of the essential facts constituting the claim on October 25, 1975, the date of the accident, in that Mr. Eidel related the facts to Trooper Membel, shield 3173, of the New York State Police. This officer took the witness’ statement and prepared the accident report previously mentioned. The State and the authority are separate entities. Neither is ordinarily liable for the other’s torts, nor is notice to one entity notice to the other. (Malone v State of New York, 1 NY2d 837; Cirincione v State of New York, 50 Misc 2d 18; Flynn v State of New York, 52 Misc 2d 101; Walach v State of New York, 91 Misc 2d 167, supra; cf. Tompkins v State of New York, 7 NY2d 906.) Concerning notice to the State, a contention similar to movant’s was raised in Burchetta v State of New York (43 NYS2d 289). In that case, the claimant was injured due to a defective condition on a State highway, and upon his application to permit a late filing under then subdivision 5 of section 10 of the Court of Claims Act, the claimant contended that the State had received notice by virtue of a report of the accident made to a police officer and the officer’s subsequent filing of an accident report. The court stated at page 291: "[t]he report to a police officer and the filing of an accident report are of no consequence. Such a report was not notice to any one in authority of the State.” Similarly, in Chergotis v State of New York (259 App Div 369, *8 373) the court rejected the notion that the filing of an accident report with the Motor Vehicle Bureau constitutes notice to the State saying: "[t]he State is not chargeable with notice of the information contained in a formal report of an accident. The report in this case is barren of any evidence that would put a State official on inquiry.” In the recent case of Biondo v New York State Thruway Auth. (Ct of Claims, April 18, 1977, Rossetti, J.), the court adhered to the rule in Chergotis and Burchetta (supra) defining the notice requirement as follows: "[i]n considering the notice factor here, we believe the proper test is whether the State subdivision responsible for the claimed damage, or the appropriate State legal office (such as the Attorney General), was aware or was made aware of the essential facts of the damage-causing incident.”
Upon the present record, the court finds that the statement given by the witness to Trooper Membel, whatever that statement may. have been, did not give notice to the State of the "essential facts constituting the claim.” (Court of Claims Act, § 10, subd 6.) The accident report is the only record of the witness’ statement to the officer before this court and we have found that language to be ambiguous. Moreover, there is nothing in the report tending to indicate any negligence chargeable to the State.
Concerning the authority, there is some indication that the authority was aware of the accident, and possibly of the prior reports of Mr. Santana’s presence on the Thruway. Exhibit C, annexed to the Attorney-General’s affidavit in opposition to the present motion, is a letter from movant’s attorney to a supervisor of the authority acknowledging counsel’s receipt of the police report previously mentioned from the authority and requesting photographs. This letter, dated November 20, 1976, shows that a person in a supervisory position in the authority was aware of the accident and possessed certain material regarding its occurrence. The court cannot determine whether the authority was apprised of the substance of Mr. Eidel’s statement, considering our view of the accident report. However, if the authority interpreted this report as the Attorney-General suggests that movant should have, then it would have been aware of the witness’ information. The authority was in a better position than movant’s attorney in this regard since the toll taker was its employee and available to its investigators. Under these circumstances, the court holds that the *9 authority was given sufficient notice of the essential facts constituting the claim.
The third factor which the court must consider is whether the State and the authority had an opportunity to investigate the claim. Movant’s attorney alleges that the claim was in fact investigated by both the State and the authority, which allegation is nowhere denied by the Attorney-General. However, in view of the court’s ruling on the notice issue, the court finds that the State did not have an opportunity to investigate this claim. The authority, on the other hand, did have an opportunity to investigate the claim. Whether it did in fact make an investigation is not apparent from the moving papers. However, the statute speaks merely of the opportunity to investigate. (Court of Claims Act, § 10, subd 6.)
The fourth factor is whether the claim appears to be meritorious. Former subdivision 5 of section 10 of the Court of Claims Act did not contain the requirement that the claim appear to be meritorious, although it has been suggested that, under prior case law, a proposed claim must have stated a cause of action. (Terrell v Green Haven Correctional Facility, Ct of Claims, June 14, 1977, Rossetti, J.) It is noteworthy that, although the Legislature amended the late filing statute for municipalities, subdivision 5 of section 50-e of the General Municipal Law (L 1976, ch 745, § 2, eff Sept. 1, 1976), at the same time as it amended section 10 of the Court of Claims Act, it did not specifically include a similar requirement in the General Municipal Law that the claim appear to be meritorious. The specific inclusion of the "appears to be meritorious” language in subdivision 6 of section 10 of the Court of Claims Act, and by implication, its absence from section 50-e of the General Municipal Law, suggests that the Legislature intended a closer scrutiny of the merits of late claims by this court, than was previously the case. It should be emphasized, however, that this factor is not an absolute requirement, and is simply one of the factors which the court must consider in determining whether to exercise its discretion in favor of a claimant.
The phrase "appears to be meritorious” is broad enough to encompass a variety of issues, both factual and legal. Unquestionably, the criteria by which the court determines this issue should be delineated clearly enough to provide a high degree of uniformity in the decisions of the court. Since the phrase "appears to be meritorious” has been interpreted in several *10 ways, the court will endeavor to analyze the various approaches and viewpoints expressed heretofore, and hopefully provide some additional clarification.
In Terrell v Green Haven Correctional Facility (supra) Judge Rossetti states: "[t]he next factor is whether the claim appears to be meritorious. Whatever else the Legislature intended by this factor, we think it at least meant the proposed claim must state a cause of action. Obviously it would be a futile gesture to permit a claimant to file a claim which is legally defective and thus subject to immediate dismissal.” Judge Moriarty expresses a similar view in Riddle v State of New York (Ct of Claims, July 7, 1977 saying: "[a]ll that is required in order to meet this fourth factor is that the proposed claim appended to the notice of motion state a cause of action.”
This court perceives a number of difficulties with equating the phrase "appears to be meritorious”, with the requirement that the proposed claim "state a cause of action”. First, the CPLR abolished the common-law demurrer. (Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 3211, C3211:24.) The form in which the challenge to legal sufficiency now exists is the motion to dismiss under CPLR 3211 (subd [a], par 7) which, unlike the demurrer, may be a "speaking motion”, since evidentiary matter may be submitted and considered. (4 Weinstein-Korn-Miller, NY Civ Prac, par 3211.29 et seq.) Having abolished the common-law demurrer in civil practice generally, it is doubtful that the Legislature intended to resurrect it in subdivision 6 of section 10 of the Court of Claims Act. Moreover, the word "meritorious” directs the court’s attention to the substance of the claim, rather than to the formal sufficiency of the pleadings. The court’s concern is not so much whether a particular pleading properly states a cause of action, but whether claimant indeed has a cause of action. Additionally, Judge Rossetti’s legitimate concern that "it would be a futile gesture to permit a claimant to file a claim which is legally defective and thus subject to immediate dismissal” (Terrell v Green Haven Correctional Facility, supra) suggests the need for a broader criterion since the claim may be legally defective in various ways and still state a cause of action. The question of subject matter jurisdiction comes immediately to mind, considering the limited jurisdiction of the Court of Claims. The test which *11 we apply under subdivision 6 of section 10 of the Court of Claims Act should encompass these other defects as well.
A different test has been suggested by Judge Silverman, who states: "it is the opinion of this Court that the standard to be used in determining whether the 'claim appears to be meritorious’ is the same or similar to that standard necessary to excuse defaults pursuant to Rule 3404 or § 5015 of the CPLR.” (Harding v State of New York, Ct of Claims, Aug. 1, 1977.) Judge Silverman would require an affidavit of merit, " 'sufficient to defeat a motion to dismiss’ ” and reciting more than just the " 'conclusory allegations of the complaint, or the unsupported conclusion that merit exists.’ 7 Carmody Wait 2 § 44.31.” (Harding v State of New York, supra.)
Judge Silverman quite propérly focuses on the merits of the claim. However, we do not believe that a claimant who has failed to comply with the notice requirements of the Court of Claims Act, is sufficiently similar to a party in default, to justify the application of that standard. Moreover, while it would undoubtedly be helpful for a claimant to include an affidavit of merit in his motion, it may well be that, in some instances, the proposed claim will supply the information necessary to pass upon the issue of whether the claim appears to be meritorious. In cases involving familiar fact patterns, or familiar areas of State liability, the proposed claim may well be sufficient for this purpose. However, where unusual fact patterns or novel questions of law exist, the court may require additional information. The court’s focus should, however, be on the substance of the allegations, and not on their form or location.
The foregoing analysis of "appears to be meritorious”, suggests a twofold test. In order for a claim to "appear to be meritorious”: (1) it must not be patently groundless, frivolous, or legally defective, and (2) the court must find, upon a consideration of the entire record, including the proposed claim and any affidavits or exhibits, that there is reasonable cause to believe that a valid cause of action exists. This formulation is an analysis of the statutory language and is not intended as a substitute therefor. The reasonable cause standard is appropriate in our view because the court need only determine whether to allow the filing of the claim, leaving the actual merits of the case to be decided in due course. While this standard clearly places a heavier burden on a claimant who has filed late than upon one whose claim is timely, it does *12 not, and should not, require him to definitively establish the merits of his claim, or overcome all legal objections thereto, before the court will permit him to file.
Turning now to the facts of this motion and applying the test which we have evolved, initially the court perceives no patent defect in movant’s application and none has been suggested by the Attorney-General. With regard to the reasonable cause criterion, the primary issue raised by movant’s allegations is whether the State and/or the authority breached any duty owed to Candido Santana. This depends on whether the State and/or the authority were obligated to take affirmative steps to remove Candido Santana from the Thruway after learning of his presence thereon. In Drake v State of New York (Ct of Claims, June 24, 1977, De Iorio, J.) the court stated: "[wjhether or not government’s acts are sufficient to create some duty is largely a question of fact. Zibbon v. Town of Cheektowaga, supra at p. 453.”*
Although there is no general duty of police protection owed to highway users merely by virtue of their status as such (Evers v Westerberg, 38 AD2d 751), a special duty of care on the part of the authority and/or the State Police, may arise when there is actual knowledge of a hazardous condition. (Rindfleisch v State of New York, 59 Misc 2d 1074, affd 32 AD2d 892, affd 27 NY2d 762; Harvey v New York State Thruway Auth., 59 Misc 2d 1079, affd 32 AD2d 889, affd 27 NY2d 762; Drake v State of New York, supra.) Movant has shown by affidavit that a witness, Charles Eidel, gave advance notice to an employee of the authority that Mr. Santana was on the Thruway, and that this witness has already so testified. While the question of the authority’s liability in such a case is far from clear, the court finds that a sufficient showing of reasonable cause has been made. With regard to the State, however, there is nothing to indicate that the State Police were ever notified of Santana’s presence on the Thruway. Movant’s petition states: "[tjhat, upon information and belief, that if the employees of the New York State Thruway Authority had called the New York State Police Barracks at New-burgh, N.Y. and if the troopers had responded and removed Candido Santana from the New York State Thruway, the accident and Mr. Santana’s resulting death could have been avoided.”
*13 Hypothetical allegations of this kind do not satisfy the court that there is reasonable cause to believe that movant has a cause of action against the State. This part of the claim does not "appear to be meritorious”, since it is highly speculative both as to the facts and the law applicable thereto.
The next factor is whether the State and/or the authority have been substantially prejudiced by the delay in filing. The Attorney-General contends that the defendants were prejudiced, though his sole contention in this regard is as follows: "All information requested was given to the movant’s attorney and no indication was received that the State or Thruway Authority would be possible defendants.” The court does not agree that the State or the authority was prejudiced by giving information about the accident to movant’s attorney. The accident report and photographs previously referred to would have been discoverable by movant upon a proper motion therefor. The court does not intend to speculate as to what other information the Attorney-General is referring to. There is no indication that any circumstance has changed or any structure or condition altered since the accident which would prevent a proper defense to this action. While the court finds that some prejudice has been suffered by virtue of the mere lapse in time, this factor would seem to affect both sides equally, and is not in and of itself "substantial”. (Ct of Claims Act, § 10, subd 6.)
The next factor is whether movant has any other available remedy. Movant has commenced an action in Supreme Court against Oneida Motor Freight, Inc. and Glenn S. Decker, respectively the owner and operator of the tractor trailer which struck and killed Mr. Santana. The court finds that this action constitutes another remedy available to movant.
CONCLUSION
The court has weighed the factors enumerated in subdivision 6 of section 10 of the Court of Claims Act. With regard to the authority, in view of the excusability of movant’s delay in filing, the sufficiency of notice and opportunity to investigate the claim, the apparently meritorious nature of the claim, and the lack of demonstrable prejudice to the defendant, the court finds a preponderance of factors favorable to movant. Regarding the State, however, the court has found a lack of notice and opportunity to investigate the claim, and is not convinced that this branch of the claim appears to be meritorious. *14 Moreover, since the court intends to grant the application with regard to the authority, that cause of action represents another remedy available to movant. The court, therefore, finds a preponderance of factors unfavorable to movant’s claim against the State.
Accordingly, movant’s application to file a late claim against the New York State Thruway Authority is granted. With respect to the claim against the State of New York, movant’s application is in all respects denied.

 Zibbon v Town of Cheektowaga (51 AD2d 448).