OPINION OF THE COURT
Gerard M. Weisberg, J.
Three years ago, the Department of Correctional Services revised its regulations governing prisoner disciplinary proceedings following litigation in the Federal courts. (See, Powell v Ward, 392 F Supp 628, mod 542 F2d 101; 487 F Supp 917, mod 643 F2d 924, cert denied 454 US 832.) Last year, our Court of Appeals resolved certain due process requirements concerning the hearing phase. (See, People ex rel. Vega v Smith, 66 NY2d 130.)
Now, this court passes upon the validity of the prehearing period of detention in segregation of a prisoner under those regulations and whether he or she is entitled to monetary damages for a violation of their requirements.
Claimant, Sam Edmonson, an inmate at Arthur Kill Correctional Facility, a State institution, was involved in an altercation with two correction officers on June 29, 1985. Not surprisingly, claimant and defendant’s employees gave different versions of the incident. The controversy was resolved at a superintendent’s hearing held on July 6, 1985. At that time, Mr. Edmonson was sentenced, inter alia, to 90 days in the special housing unit with a loss of good time. He had been placed there on the day of the incident and so remained until August 12, 1985, when he was released pursuant to a finding by the Departmental Review Board on August 7, 1985. This action was based on a "procedural error” in that the superintendent’s hearing was not commenced "within 7 days of confinement.”
Claimant now seeks to file a late claim under Court of Claims Act § 10 (6) for "[imprisonment without Due Process” [sic] because of his confinement in the special housing unit for "eight (8) days without investigation or hearing.” The proposed claim does not set forth a cause of action for the period between the reversal of the superintendent’s hearing on August 7, 1985 and Mr. Edmonson’s release from the special housing unit on August 12, 1985.
We construe Mr. Edmonson’s claim as one for false imprisonment. The elements of that cause of action include an intended confinement by the defendant of which plaintiff was *454 conscious and to which he did not consent. Also, the restriction on the claimant’s liberty must not have otherwise been privileged. (Broughton v State of New York, 37 NY2d 451, 456, cert denied sub nom. Schanbarger v Kellogg, 423 US 929.) We recognize that a transfer to a special housing unit should be characterized as a "confinement” in that it adds to the restraints on an inmate’s freedom. (See, Wolff v McDonnell, 418 US 539.) Two questions therefore arise. First, was the confinement privileged, and, second, did the failure to hold a hearing within the prescribed period give rise to a cause of action.
"The operation of a correctional institution is at best an extraordinarily difficult undertaking.” (Wolff v McDonnell, supra, p 566.) Any restrictions on an inmate’s already limited liberty must be balanced against the State’s interest in the smooth functioning of its correctional institutions, keeping in mind that the personal safety and welfare of both inmates and employees may depend on the efficacy with which prison procedures are carried out. The "administrative burden” imposed on institution officials is a factor to be taken into consideration. (People ex rel. Vega v Smith, 66 NY2d 130, 141, supra.)
An inmate too has interests against close confinement that should be afforded constitutional protection. Although only a transfer "from one extremely restricted environment to an even more confined situation” (Hewitt v Helms, 459 US 460, 473) is involved, "the inmate may face loss of good time, which could affect length of the prison term, as well as 'the stigma of wrongdoing or misconduct,’ which could affect parole.” (People ex rel. Vega v Smith, 66 NY2d 130, 141, supra, citing Hewitt v Helms, supra.) He is also placed in an extremely restricted environment where all aspects of his daily routine are severely curtailed and controlled. (See, 7 NYCRR part 300.)
Turning now to the pertinent regulations themselves, a misbehavior report constitutes the formal charge of a superintendent’s hearing. (7 NYCRR 254.3.) This was prepared on the day of the incident and served on July 3, 1985. The report must be served on the inmate at least 24 hours before the hearing. (7 NYCRR 254.6 [a].) In the case of an inmate who is confined, as was the claimant, the hearing must be commenced as soon as is "practicable”, but in "no event may it be commenced beyond seven days of said confinement without authorization of the commissioner or his designee.” (7 NYCRR 251-5.1 [a].) It appears that the Departmental Review Board *455 construes this provision to include the date of confinement. (Cf. General Construction Law § 20.)
Although confinement without a hearing may continue for seven days, the framework of the rules protects an inmate’s right to due process. The prisoner is provided with an assistant whose role it is to explain the charges to the inmate, interview witnesses and report the results of his efforts to the inmate. (7 NYCRR 251-4.2.) If necessary, an interpreter is made available (7 NYCRR 254.2) as is a limited right to call witnesses. If this latter privilege is denied, the hearing officer shall give the inmate a written statement explaining the reason, including any specific threat to institutional safety or correctional goals posed by the request. (7 NYCRR 254.5 [a].) Provision is also made for the testimony of a witness outside of the presence of the accused prisoner with the tape of his testimony being made available "unless the hearing officer determines that so doing will jeopardize institutional safety or correctional goals.” (7 NYCRR 254.5 [b].) The types of dispositions are enumerated by the regulations as are appeal procedures. (7 NYCRR 254.7, 254.8.)
After balancing the respective interests, we conclude that the regulations do not violate claimant’s right to due process. Thus, his confinement for seven days following the incident was privileged and no cause of action for false imprisonment will lie. The State’s interest in the safe administration of its penal institutions is furthered by these regulations without undue infringement on a prisoner’s limited right to remain in the general inmate population. An analogy can be made with the permissible encroachment on an individual’s interest not to have criminal charges pending against him, within the context of the speedy trial rule. (CPL 30.30; see, Leventhal and Rosenthal, A Recipe for Understanding a Defendant’s Speedy Trial Rights: Worley, Anderson and a touch of Gaggi, 37 Brooklyn Barrister 101 [Mar. 1986]; see also, Gerstein v Pugh, 420 US 103.) A further analogy can be made with the mandatory release of a defendant from custody upon failure to timely dispose of a felony complaint. (CPL 180.80.)
What then of the one day’s confinement in violation of the regulations? Although there exists a cause of action for the intentional and malicious segregation of an inmate, this will only lie where there is no legitimate reason for the restrictive confinement and where even "rudimentary protections of due process” are absent. (Wilkinson v Skinner, 34 NY2d 53, 61.) Such circumstances have not been demonstrated here. Under *456 current law, there is no cause of action for money damages for the segregation of an inmate in a special housing unit and we will not create one. The "threat of civil liability, even in the absence of malice or bad faith, would place a severe limitation on the ability of the Commissioner to control and operate correctional facilities, a limitation which this court should not and will not occasion”. (Treacy v State of New York, 131 Misc 2d 849, 851; cf. De Feo v State of New York, Ct Cl, Sept. 7, 1984, Lowery, J.)
Thus, while monetary relief is barred, this prisoner’s rights were vindicated by the dismissal of the charges against him by reason of the violation of his "speedy hearing” rights.
Finally, we observe that claimant has not explicitly characterized this action as one based upon the violation of his civil rights under 42 USC § 1983. Although we do not decide the issue, it appears, however, that a civil rights action for money damages cannot be brought against the State of New York. (Quern v Jordan, 440 US 332.)
Since claimant has not set forth a legally viable cause of action, his claim cannot be said to have the appearance of merit. (Matter of Santana v New York State Thruway Auth., 92 Misc 2d 1.) Accordingly, his motion is denied.