OPINION OF THE COURT
David A. Weinstein, J.
This decision follows the trial of the claim of Aaron Callender, an inmate appearing pro se, which was conducted via videoconference from Elmira Correctional Facility on June 8, 2012. The claim, which was filed on August 15, 2007, alleges that Department of Correctional Services[1] employees at Southport Correctional Facility (Southport) failed to follow procedures in regard to timely deciding Callender’s appeal from a tier III disciplinary hearing. The claim further alleges that once the hearing disposition was ultimately reversed, Callender was held for an additional 36 days before being moved to his previous housing level where he would be afforded more privileges. Claimant seeks money damages for the 36 days of confinement.
By way of background, Southport is composed almost entirely of prisoners placed in a special housing unit (SHU) (see generally Lee v Coughlin, 26 F Supp 2d 615, 624-625 [SD NY 1998] [summarizing operation of Southport]). These prisoners remain in their cells 23 hours a day, and have highly limited programming opportunities, visitation rights, and recreational options. At the time of the incident (and currently), Southport used the Progressive Inmate Movement System (PIMS), consisting of three levels to classify SHU inmates based on various factors, *653 including their acts of misbehavior and overall disciplinary records (claimant’s exhibit 5, Southport Correctional Facility Special Housing Unit — SHU Staff and Inmate Orientation Manual [Manual]).[2]
Under this system, inmates are granted a range of privileges and subject to certain restraints depending on their PIMS level. PIMS level I is the most restrictive, where prisoners are denied use of headphones and commissary privileges, are placed in waist chain restraints during visits and recreation, and may possess only limited items of property and clothing (Manual § 1). Level II grants more privileges, including cell study program, use of headphones, and monthly commissary privilege. In addition, restraints are removed during visits and recreation {id.). Inmates on level III have the most privileges (including broader rights to clothing and property), having their handcuffs and waist chain removed in the visiting area and recreation yard, the ability to purchase candy from the commissary, and certain limited rights to shower and make phone calls {id.). Claimant testified that once an inmate was placed on a more restrictive PIMS level, movement back to the prior level had to be earned through good behavior.
All prisoners who arrive at Southport are subject to restrictions like those on level I for at least 14 days upon their arrival at the prison {id.). Moreover, before a prisoner can be transferred to a less restrictive level, there must first be a 30-day adjustment period in which the inmate receives no disciplinary reports. In any case, while the prisoner’s recent misbehavior and disciplinary record are “factors to consider” in placing the inmate, ultimately the decision on movement “is at the discretion of the Captain, or his designee” {id.).
Callender testified that on February 11, 2007, he was charged with committing an unhygienic act and interference with an employee. He was immediately moved from PIMS level III to level I, which involved placement into a cell equipped with a *654 plexiglass shield and a reduction in his privileges, as outlined above. Claimant asserted that he did not commit any of the acts with which he was charged.
A tier III disciplinary hearing was conducted on February 20, 2007, and on March 7, 2007, a disposition was rendered finding Callender guilty of the charges. He was sentenced to six months in a more restrictive PIMS level than the one he had been in prior to the incident.[3] The hearing disposition record indicates that the sentence was to commence on February 21, 2007, with a release date of June 21, 2007 and two months of the sentence suspended. In his trial testimony, Callender recounted some of the loss of privileges and the restrictions that prisoners in general experience at the three PIMS levels, which comported with the descriptions in the Manual.
Callender maintained that his rights were violated when the hearing officer denied his request to call certain witnesses to the incident to testify on his behalf at the disciplinary hearing. On this basis, he appealed the disposition, but did not receive the Commissioner’s decision within the 60 days provided for in 7 NYCRR 254.8, which sets forth hearing appeal procedures.[4] After further inquiries, by memorandum from the Southport *655 Superintendent dated June 28, 2007, claimant was informed that the hearing disposition had been reversed and references thereto had been expunged from claimant’s institutional record. The memorandum stated: “Due to administrative oversight, appeal was not reviewed in a timely fashion” (claimant’s exhibit 1). At the time Callender received this information, he was on PIMS level II, and made requests to a number of correction officers that he be returned to level III, but his requests were not granted. Claimant testified that he could have been moved, because space was available in level III housing.[5]
On August 3, 2007, 36 days after Callender was informed of the reversal, he was moved to PIMS level III.
On cross-examination, Callender acknowledged that there was nothing in the Superintendent’s reversal that indicated that his appeal had been heard or that it was reversed for any reason other than administrative oversight. He further acknowledged that there is a requirement under PIMS that an inmate undergo a 30-day “cool-off’ period before moving up a level and if there were additional disciplinary infractions in the meantime, the 30-day period would start over.
Discussion
Claimant’s allegations sound in wrongful confinement (the label given an unjust conviction claim in the context of an already incarcerated claimant [Donald v State of New York, 17 NY3d 389, 394 (2011)]). To prove such a cause of action, claimant must show: “(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged” (Broughton v State of New York, 37 NY2d 451, 456 [1975], cert denied sub nom. Schanbarger v Kellogg, 423 US 929 [1975] [citations omitted]).
Based upon my review of the record, this claim must fail for two overlapping reasons: claimant’s placement on a more re *656 strictive confinement level pursuant to Southport’s PIMS does not constitute “confinement” for purposes of a wrongful confinement claim, and in any case there has been no violation of any regulation or policy in this case.[6]
In regard to the first failing, the case law does not set forth a clear definition of “confinement” for individuals already incarcerated. While placement in a special housing unit has generally been treated as “confinement” under the first element of the Broughton test (e.g. Ruggiero v State of New York, Ct Cl, Nov. 1, 2010, Collins, J., claim No. 118304, UID No. 2010-015-187; Malik v State of New York, Ct Cl, June 10, 2007, DeBow, J., claim No. 113091, UID No. 2007-038-557), not every action by correctional officials that increases a prisoner’s restraints or limits his privileges may be deemed confinement for purposes of this tort. For example, a prisoner has “no statutory, constitutional or precedential right to his prior housing or programming” (Matter of Fridella v Coughlin, 177 AD2d 872, 873-874 [3d Dept 1991]), nor may he bring a claim based on his transfer from one facility to another, even if one prison may have stricter conditions of confinement (Henriquez v State of New York, Ct Cl, Apr. 3, 2003, Minarik, J., claim No. 106593-A, UID No. 2003-031-015).
A wrongful confinement claim “has roots in due process considerations” (Bunting v State of New York, Ct Cl, Nov. 13, 2001, Bell, J., claim No. 101954, UID No. 2001-007-579; accord White v State of New York, Ct Cl, July 22, 2010, Moriarty, J., claim No. 105960, UID No. 2010-037-507; see also Arteaga v *657 State of New York, 72 NY2d 212, 221 [1988] [State not immune from wrongful confinement claim if “confin(ed)’’ without “granting a hearing or other required due process safeguard”]; Wilkinson v Skinner, 34 NY2d 53, 57 [1974][7] [prisoner had cause of action for placement in punitive confinement, where prison authorities did not comply with “minimal due process requirements”]). Therefore, the scope of “confinement” for purposes of such a claim should track those instances where due process attaches. That is, a prisoner may not claim damages for prison authorities’ failure to comply with their own internal regulations and policies, where those authorities had the legal right to deny the prisoner any procedural safeguards at all in the first instance (see Bunting n 3 [“(s)howing that defendant violated its own procedural rules in a disciplinary hearing does not compel the conclusion that a violation of due process has occurred” (citations omitted)]).
The Due Process Clause, however, “does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner” (Sandin v Conner, 515 US 472, 478 [1995]). Rather, prisoners subject to actions by prison authorities that are “within the normal limits or range of custody which the conviction has authorized the State to impose” are afforded no constitutional due process protection {id. [citation omitted]). Due process protections are required only where the prisoner is subject to an “atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life” (id. at 484; see also Matter of Cliff v De Celle, 260 AD2d 812, 814 [3d Dept 1999] [finding, based on Sandin, that prisoner’s due process rights not implicated by “relatively insubstantial nature of the potential deprivation”]).
*658 The general principles set forth in Sandin are applicable here: certain changes in conditions of confinement for the worse are within those matters “ordinarily contemplated by a prison sentence,” and a cause of action should not arise out of disciplinary confinement that mirrors that imposed on prisoners for administrative reasons (see Sandin, 515 US at 480, 486). Thus, the restraints imposed must represent a substantial departure from those to which other prisoners are subject (i.e., they must be “atypical and significant”) before they can be deemed “confinement” within the correctional setting.
Under that standard, I cannot find that Callender was “confined” in this case when he was not moved to level III after the expiration of his disciplinary sentence, for several reasons. As noted above, the operation of Southport’s PIMS is left entirely within the discretion of prison officials (see Sandin, 515 US at 486 [due process does not attach where confinement “did not exceed similar, but totally discretionary, confinement in either duration or degree of restriction”]; Pettus v State of New York, Ct Cl, Jan. 15, 2009, Collins, J., claim Nos. 113704, 113705, UID No. 2009-015-513 [no cause of action for placement in maximum security facility, as Commissioner has “almost unbridled authority” to do so]). Moreover, prisoners are transferred from one confinement level to another on a variety of administrative grounds, unrelated to any wrongdoing by the prisoner, including the prisoner’s arrival in the facility. Finally, the varying gradations of deprivation to which a prisoner is subject on the three PIMS levels, regarding such matters as restraints, possessions, and number of showers — while undoubtedly of importance to the prisoner — are not “significant” for due process purposes, particularly when compared to the deprivation occasioned by Callender’s placement in SHU at South-port in the first instance, which is not challenged here (see Lee, 26 F Supp 2d at 632 [all Southport inmates are “denied access to the wide variety of prison programs, . . . their access to personal belongings is severely restricted(,) . . . (they) are restrained when they leave their cells by handcuffs and for long periods also with waist chains; they also exercise alone, with restraints, and in ‘cages,’ as opposed to open spaces(, and) there is no congregate activity at Southport”]).
Finally, even if claimant’s placement on a more restrictive PIMS level were held to constitute confinement, correctional officials’ actions in this regard are immune from suit, and therefore privileged.
*659 Correction officials have quasi-judicial immunity for taking “authorized disciplinary measures” against inmates, unless correctional personnel act “in violation of the governing rules and regulations” (Arteaga, 72 NY2d at 220; see also Mitchell v State of New York, 32 AD3d 594, 594-595 [3d Dept 2006] [“defendant is immune from liability for the actions of employees of the Department of Correctional Services concerning the discipline of inmates if the employees act under the authority of and in compliance with the governing statutes and regulations”]). Similarly, failure to adhere to regulations governing prison disciplinary proceedings renders the confinement that results “not privileged,” meeting the fourth element of the test for wrongful confinement (see Lee v State of New York, 124 AD2d 305, 306-307 [3d Dept 1986]). Although the record provides no detail as to why claimant was held on a more restrictive PIMS level for 36 days after the reversal of his confinement, the Southport Manual gives full discretion to correctional staff to decide on placement within the PIMS framework, and thus the fact that claimant’s disciplinary sanction was overturned did not require his movement to a different level (see supra at 652-653). Indeed, the Manual requires that an individual who has been subject to such sanction remain on the same level for at least 30 days upon its termination (id.).
The Manual further provides that once an inmate is eligible to move to a less restrictive level, such movement is dependant on the availability of space on that level. Where the governing directives specifically authorize prison authorities to keep a prisoner on a more restrictive PIMS level after his term had expired, no cause of action arises from defendant’s exercise of that power (see Dubois v State of New York, Ct Cl, Dec. 30, 2003, Hard, J., UID No. 2003-032-524 [where regulation authorized State to hold defendant in Southport SHU through practice of “detention admission” after sanction ended, detention was privileged]).
It is, in any event, claimant’s burden to demonstrate how defendant ran afoul of governing regulations (see Geer v State of New York, Ct Cl, Mar. 9, 2000, McNamara, J., claim No. 100902, UID No. 2000-011-502 [claimant failed to rebut the presumption of absolute immunity]; Holloway v State of New York, 285 AD2d 765, 766 [3d Dept 2001] [affirming dismissal of wrongful confinement claim where “there is insufficient evidence in this record” to show a statutory or regulatory violation]). In light of the foregoing, he has failed to meet that burden.
*660 As a result, claim No. 114093 is hereby dismissed.
All objections or motions that have not yet been ruled upon are denied.

. By chapter 62 of the Laws of 2011, the Department of Correctional Services was merged with the Division of Parole to create the Department of Corrections and Community Supervision. Since the events described in this decision predated the merger, the agency will be referred to as “DOCS.”

. At trial defendant objected to the introduction of this exhibit, marked as exhibit 5 for identification, on the ground that it was unclear whether the rules and regulations contained therein were in force at the time of the incident. The court directed the Assistant Attorney General appearing in this matter to make appropriate inquiries regarding whether this was the case, and to inform the court of the results. By letter dated June 21, 2012, after determining that the PIMS levels described in the document had not changed since the date of the incident, defendant withdrew its objection to this exhibit and to claimant’s exhibit 3, which consists of three torn out pages from the same publication.

. The decision lists his sentence as “SHU,” but Callender acknowledged that he was already in SHU, and his testimony made clear that the upshot of his sentence was that he was moved to level I. It is not entirely clear from the record at what point during this particular sentence Callender was moved from level I to level II, or if he was ever moved from level I to level II and then back to level I. Callender testified that based on a printout of his internal movement history (claimant’s exhibit 6), it could be determined by familiarity with block and cell number assignments at Southport that he was on level I on March 26, 2007. In addition, Callender noted that during this period, he was moved to Attica Correctional Facility for mental health observation. His movement history indicates that this occurred from April 5, 2007 to April 19, 2007, after which he returned to Southport on April 20, 2007.

. 7 NYCRR 254.8 provides:
“Any inmate shall have the right to appeal the disposition of any superintendent’s hearing, to which he was a party, to the commissioner within 30 days of receipt of the disposition. The commissioner or his designee shall issue a decision within 60 days of receipt of the appeal. The commissioner or his designee may:
“(a) affirm the hearing disposition;
“(b) modify the hearing disposition by dismissing certain charge(s) and/or reducing the penalty imposed;
“(c) reverse the hearing disposition; or
“(d) reverse the hearing disposition and order a new hearing. Whenever a new hearing is ordered pursuant to this subdivision, the penalty imposed at the new hearing may not exceed the penalty imposed at the original hearing.”

. In this regard, claimant sought to introduce into evidence the affidavit of Angel Mendez, an inmate who was on level II during the period that overlapped with Callender’s time on that level. Defendant objected on hearsay grounds, and the court reserved decision. The document was marked for identification only as claimant’s exhibit 2, pending the court’s determination. I now sustain the objection. To the extent this document has any relevance to claimant’s case, it contains an out-of-court statement introduced to prove the truth of the matter asserted, and thus is hearsay (see Nucci v Proper, 95 NY2d 597, 602 [2001]). Claimant has not demonstrated that it falls within an exception to the hearsay rule.

. To the extent this claim can be construed to allege wrongful confinement from the time of the disciplinary determination to the time of the reversal, claimant has failed to meet his burden of establishing that the result would have been different had the appeal been timely heard (see Ruggiero v State of New York, Ct Cl, Nov. 1, 2010, Collins, J., claim No. 118304, UID No. 2010-015-187 [“(e)ven if such a violation occurred, however, claimant must establish proximate cause by showing that the outcome of the hearing would have been different had no violation . . . occurred”]; Rivera v State of New York, Ct Cl, Feb. 8, 2006, Sise, EJ., claim No. 102781, UID No. 2006-028-008 [“(w)ithout any proof that Defendant’s failure to carry out a duty . . . caused him any actual harm, there can be no recovery” for claim that defendant violated procedural rule in proceedings that led to his placement in SHU]). That the charges against Callender were reversed and his records expunged cannot, without more, support this claim (see DuBois v State of New York, Ct Cl, Dec. 30, 2003, Hard, J., claim No. 105607, UID No. 2003-032-524, citing Davis v State of New York, 262 AD2d 887 [3d Dept 1999] [dismissal of underlying charges does not weaken absolute immunity where claimant failed to demonstrate DOCS personnel exceeded the scope of their authority or violated applicable rules and regulations]).

. Wilkinson and Edmonson v State of New York (132 Misc 2d 452, 455 [1986]) both apply standards for when due process attaches (or when “confinement” occurs) that are arguably at odds with the criteria articulated in this decision. The former opinion states that due process protections should not turn on whether a particular punishment is “substantial” (34 NY2d at 58), while the latter states that any action that “adds to the restraints on an inmate’s freedom” may be confinement (132 Misc 2d at 454). Those holdings, however, are based on pre-1995 federal decisional law concerning prisoner’s due process rights concerning disciplinary confinement, which has now been “fundamentally altered” by Sandin (see Ragland v Corcoran, 1997 WL 37966, *4, 1997 US Dist LEXIS 888, **12 [SD NY, Jan. 31, 1997, No. 95 Civ. 0195 (LAP)]; see also Bunting n 2, citing Sandin v Conner, 515 US 472 [1995] [“the underlying requirements to establish a violation of procedural due process under the United States Constitution have changed in recent years with respect to inmates placed in punitive segregation”]).